[Civil No. 3814. Filed September 26, 1936.]

[60 Pac. (2d) 1074.]

P. H. BROOKS, Plaintiff, v. JAMES H. KERBY, as Secretary of State, Defendant.

Mr. P. H. Brooks, Plaintiff, *in pro. per.*

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for Defendant.

LOCKWOOD, C. J.—This is an original proceeding in this court by P. H. Brooks, hereinafter called plaintiff, against James H. Kerby, as Secretary of State of the state of Arizona, hereinafter called

defendant, seeking a writ of *mandamus* to compel the latter to issue to plaintiff a certificate of nomination as a candidate for the office of state tax commissioner, at the general election to be held on the 3d day of November, 1936, and to certify the fact of plaintiff's nomination for such office to the various boards of supervisors of the state of Arizona, so that his name may be placed on the ballot to be used at the general election on the 3d day of November, 1936, as a candidate for such office. The alternative writ issued, and the matter is before us on the return thereto.

Defendant demurred to the petition, and then answered, alleging, in substance, that (a) the law does not require nor permit the election of a tax commissioner at the general election in 1936, and (b) that, even if it does, the plaintiff has failed to qualify himself as a candidate for such office, for various reasons which we shall set forth and consider at a later point in this opinion.

There are two questions, and two only, which it is necessary for us to consider in determining whether the alternative writ heretofore issued should be made peremptory. The first is whether, under the law of Arizona, a tax commissioner should be chosen by the electors of the state at the general election to be held November 3, 1936, and, second, if the answer to the first question be in the affirmative, whether petitioner has so qualified himself as to be entitled to receive a certificate of nomination as a candidate for such office and to have his name certified to the various boards of supervisors of the state so that his name may be placed upon the ballots. We consider these questions in their order.

 The first will be determined by the interpretation of our statutes providing for the choosing of

members of the tax commission. This commission is not a constitutional but a statutory body, first created by chapter 23 of the Regular Session of the First Legislature of the state of Arizona, the act being approved May 9, 1912. Section 2 of the act sets forth the manner in which the commission shall be chosen, and their terms, as follows:

"Sec. 2. The three persons first to compose said Commission shall be appointed by the Governor, by and with the advice and consent of the Senate, before the adjournment of the first session of the first State Legislature.

"They shall be so appointed that the term of one member shall expire January the first, 1913, one January the first, 1915, and one January the first, 1917, or until their successors are elected and qualified.

"The successor of the first appointed member of the Commission whose term expires January the first, 1913, and all subsequent incumbents of said office, shall be elected at general elections, and shall serve for six years.

"The members of the State Tax Commission to be elected shall be elected by the qualified electors of the State at large. The names of all candidates for the office of member of the State Tax Commission shall be placed on the regular ballot without partisan or other designation except the title of the office."

It is evident from the language of this section that the legislature anticipated when the act was passed that a commissioner would be elected at a general election, in the year 1912, for a term of six years, beginning January 1, 1913, and one biennially thereafter for a like term. No other interpretation could possibly be given to the section.

Pursuant to the act, the Governor, on May 13th of that year, appointed Messrs. C. M. Zander, Chas. R. Howe and George Michelson as commissioners, and

they were duly confirmed. Thereafter, and shortly before June 1, 1912, all three of these commissioners resigned, and on June 1st the Governor appointed P. J. Miller to fill the term ending January 1, 1913, C. M. Zander to fill the term ending January 1, 1915, and Chas. R. Howe to fill the term ending January 1, 1917. It was evidently the intention of both the legislature and the Governor at this time that there would be a general election held in November, 1912, at which time a tax commissioner would be elected for a term of six years to succeed P. J. Miller, his term expiring on January 1, 1913, but on the 15th day of July this court handed down an opinion in the case of *State ex rel.* v. *Osborne,* 14 Ariz. 185, 125 Pac. 884, in which we held, after a most careful and elaborate review of our constitutional provisions, that section 11 of article 7 of the Constitution, reading as follows: "There shall be a general election of Representatives in congress, and of State, county, and precinct officers on the first Tuesday after the first Monday in November of the first even numbered year after the year in which Arizona is admitted to Statehood and biennially thereafter," prohibited an election of state, county and precinct officers during the year 1912, and provided that the first general election for such officers was to be held in November, 1914. There was, therefore, no general election held in 1912, and no state, county, nor precinct officers elected in that year. In November, 1914, the first general election was held. The term of Miller, by the language of the act creating the tax commission, had expired on January 1, 1913, but, no election having been held in 1912, and the statute remaining unchanged, by virtue of its language he held over until his successor was elected and qualified. But this hold-over period was not a

part of the original term, which, as we have shown, had already expired, but a part of the new six-year term beginning January 1, 1913, and which *term* continued to run, regardless of how it was filled, by holdover, election or appointment, or whether it was filled at all. *Wilson* v. *Shaw,* 194 Iowa 28, 188 N. W. 940; *State* v. *Tallman,* 24 Wash. 426, 64 Pac. 759; *State ex rel.* v. *Hingle,* 124 La. 655, 50 So. 616. The term of Zander expired on January 1, 1915. The state officers, therefore, erroneously believing that no new term had commenced on January 1, 1913, conceived it to be their duty to elect two tax commissioners, *each for a full term of six years,* at the general election in 1914. The election was conducted in conformity with this view, and C. M. Zander and Thomas E. Campbell were declared elected each for a term expiring January 1, 1921. The term of Howe expired January 1, 1917, and he was re-elected tax commissioner at the general election held in 1916. In 1918, however, the officers of the state, believing that, when Zander and Campbell were elected in 1914 to succeed Miller and Zander, they were elected for full terms of six years each, called no election and no tax commissioner was voted for nor elected that year. This procedure of electing two tax commissioners in one even-numbered year, one in the succeeding biennium, and none in the third biennium, has continued from that day to this. In 1928 the laws of Arizona were revised; the revision was enacted by the legislature, and all laws not contained in the revision were repealed. Section 3056 of that Code created a tax commission, and provides how its members shall be chosen in the following language:

"*Creation; Members; Qualifications; Election; Terms.* There is created the state tax commission,

composed of three members who shall possess knowledge and experience in the subject of taxation, and shall have been residents of Arizona for not less than five years prior to their election or appointment. One member shall be elected every two years, at the general election, for a term of six years, beginning the first day of January following. The names of all candidates for the office shall be placed on the ballot without partisan or other designation, except the title of the office. The member having the shortest time to serve, and not holding his office by appointment or by election to fill a vacancy, shall be chairman of the commission.''

The question before us then is whether the officers of the state properly construed the act of 1912 and the Code of 1928. We think there can be no doubt it was the original intention of the legislature that one commissioner should be elected every two years, for otherwise there could have been no purpose in providing that the terms of those who were first appointed should end, respectively, on January 1, 1913, 1915, and 1917, and that their successors should serve for six years each. That this was undoubtedly its intent is confirmed by the action of the legislature when it adopted the Revised Code of 1928, for therein it explicitly stated ''one member shall be elected every two years, at the general election, for a term of six years, beginning the first day of January following.'' In the case of *In re Estate of Sullivan,* 38 Ariz. 387, 300 Pac. 193, 195, we stated the effect of the revision in the following language:

''It is well known that it was the object of the code commissioner and the Legislature in preparing the Revised Code of 1928 to change the legal meaning of the existing law as little as possible, but, as stated in the preface to the official edition of said Code, 'to reduce in language' and to avoid redundancy. Chapter 35, Session Laws, 1925. We should therefore presume that when a word, a phrase,

or a paragraph from the 1913 Code is omitted from the Code of 1928, the intent is rather to simplify the language without changing the meaning, than to make a material alteration in the substance of the law itself. Of course, if the only conclusion which can be drawn from the new language is that it was intended to change the legal effect of the statute, the latest expression of the will of the Legislature must prevail, but where two meanings can be given, we should assume rather that one which leaves the law as it was originally than the one which changes the legal effect of the statute as well as its phraseology.''

Whether we are to construe the later enactment as an indication of what the legislature thought should have been done when no election was held in 1912, or as being so repugnant to the act of that year that it constitutes a change in the law, is immaterial, for the ultimate result would have been the same in either case. The language of section 3056, *supra,* is so explicit and positive that there can be no question as to its meaning. eginning with the year 1930, one member of the tax commission was to be elected every two years. That it was in the power of the legislature to require this, notwithstanding that it might alter the term of some of the then commissioners, cannot be questioned. *High* v. *State,* 14 Ariz. 429, 130 Pac. 611; *Crawford* v. *Hunt,* 41 Ariz. 229, 17 Pac. (2d) 802. Such being the case, it is immaterial as to which, if any, of the commissioners elected up to that date were legally chosen. They were undoubtedly commissioners *de facto,* and, whether all or any of them were commissioners *de jure,* all of their acts were valid. Since at no time was a term longer than six years provided for, the terms of all who were elected before 1930 have unquestionably long since expired. We therefore take up the situation as it existed at

the general election in 1930, this being the first general election after the adoption of the Code in 1928.

At that time it was the duty of the proper officers to provide for the election of one, and one only, tax commissioner, and the one so elected would take office on the 1st day of January, 1931, and hold until the 1st day of January, 1937. As a matter of fact, we know that the officers did not perform their duty, and no tax commissioner was elected in the year 1930. But this could not affect their duty to provide for the election of one, and one only, full-term tax commissioner at the general election in the year 1932, the commissioner so elected taking office on the 1st day of January, 1933, and holding until the 1st day of January, 1939. Whether or not it was their duty also, since no commissioner was elected as required by law in the year 1930, to provide for the election of a commissioner to complete the *unexpired* term of the one who should have been elected in 1930, we need not now inquire. It was their duty in 1934 to provide for the election of one, and one only, tax commissioner for a full term beginning January 1, 1935, and ending January 1, 1941. Whether or not it was their duty, in case vacancies existed in the terms which commenced January 1, 1931, and January 1, 1933, to call for the election of commissioners to fill the remaining parts of those terms, we need not now consider, for that question is not before us. Following the express language of the Code, it was and is the duty of the proper officers of the state to provide for the election of a tax commissioner at the general election to be held November 3, 1936, for a term of six years beginning January 1, 1937, for there can be no question that under the precise language of that Code there will be a vacancy

in the office of tax commissioner on January 1, 1937, which must be filled for a term of six years, at the election to be held on November 3, 1936. We therefore unhesitatingly answer the first question in the affirmative.

 We consider next whether plaintiff has qualified himself under the law so that his name should be placed on the ballot as a candidiate for tax commissioner at the election for such office, which we have stated must be held on November 3, 1936. He bases his claim upon the provisions of section 1293, Revised Code of 1928, which reads as follows:

*"Nomination Otherwise than by Primary.* Candidates for public office may be nominated otherwise than by primary election or by party committee in the following manner: A certificate of nomination stating the name of the office to be filled, the name and residence of the candidate and other information required by this section shall be filed with the officer with whom primary nomination papers are required to be filed, after the holding of the primary election and within ten days after such primary election. Such certificate shall be signed only by voters who have not signed the nomination papers of a candidate for such office to be voted for at the last primary election, and who have not voted for any candidate for such office at such primary election. Such certificate of nomination shall be in substantially the following form: . . .

"Such certificate shall conform as near as may be to the provisions of this article relating to nomination papers of candidates to be voted for at primary elections, and shall be signed by at least one per cent. of the qualified electors of the state, county, or subdivision for which the candidate is nominated. Such percentage shall be determined by the total vote cast for governor in the state or such county or subdivision at the last general election at which a governor was elected."

He alleges that he filed with defendant a petition which conformed strictly with the terms of such section, nominating him for tax commissioner, and defendant admits that one in the form required by such section was so filed, containing the requisite number of names purporting to be those of qualified electors of the state of Arizona, but he alleges that plaintiff has not filed a petition as required by section 1275, Revised Code of 1928, and further that he has not filed an expense account as required by sections 1286, 1287 and 1292, Revised Code of 1928, and that therefore he is not entitled to receive a certificate of nomination nor to have his nomination certified to the various boards of supervisors. Section 1275 provides for the manner in which any person who desires to become a candidate at a primary election for a party or nonpartisan nomination shall file his petition. It is sufficient for us to say, without quoting the section further, that, since plaintiff does not ask to be a candidate at any primary, but at a general election, he does not fall within the provisions of section 1275, and therefore was not required to file a petition in conformity therewith. Sections 1286, 1287 and 1292 refer to the filing of expense accounts. We quote therefrom as much as is necessary for the purpose of this case:

"§ 1286. *Statement of Expenses to be Filed.* Within ten days after any primary election, all candidates therein shall prepare an itemized statement."

"§ 1287. *Certificate Not to Issue to Candidate Failing to File Statement.* A candidate receiving the nomination of a political party, or a non-partisan nomination, and failing or refusing to file a full and complete report as required by the preceding section, shall not receive the certificate of nomination until such reports are filed."

It is obvious from these quotations that the sections do not refer to a candidate at the general election but one in a primary. Plaintiff was not a candidate at a primary election, and did not receive the nomination of a political party, nor nonpartisan nomination, at such election, nor does he rely on any such nomination or election. We think, therefore, that it was both unnecessary and improper for him even to attempt to file an expense account under those sections. Section 1292 merely refers to the penalty to be imposed upon a person who fails to comply with the provisions of sections 1286 and 1287. Since plaintiff was not required to comply with those provisions, obviously no penalty can be imposed upon him for his failure to do so.

This disposes of all of the questions raised in this proceeding and necessary for its determination.

We hold, therefore, since the law requires that a tax commissioner be elected at the general election to be held November 3, 1936, for the term of six years, and since plaintiff has complied with the provisions of the law prerequisite to his receiving a certificate of nomination for such office, and of having his name certified to the various boards of supervisors, to be printed on the ballots to be used at such election, the alternative writ of *mandamus* heretofore issued should be made peremptory, and it is so ordered.

McALISTER and ROSS, JJ., concur.