[Civil No. 3824. Filed February 1, 1937.]

[64 Pac. (2d) 809.]

STATE OF ARIZONA ex Rel. JOHN L. SULLIVAN, Attorney General of the State of Arizona, Plaintiff, v. THAD M. MOORE and FRANK LUKE, Defendants.

Mr. John L. Sullivan, Attorney General, and Mr. Charles L. Strouss (of Counsel), for Plaintiff.

Mr. F. C. Struckmeyer and Messrs. Cunningham & Carson, for Defendant Thad M. Moore.

Mr. Thomas W. Nealon, Miss Alice M. Birdsall and Mr. Emmet M. Barry, for Defendant Frank Luke.

LOCKWOOD, J.—This is an original proceeding in *quo warranto* in this court, instituted by the State of Arizona, on the relation of the Attorney General, against Thad M. Moore and Frank Luke as defendants, claiming that each of them unlawfully usurps, holds, and exercises the office of a tax commissioner of the State of Arizona. Defendants answered the complaint separately, raising many procedural questions by motion and demurrer, and then answered on the

merits. The plaintiff demurred to the answers as not stating a defense to the complaint, and the cause was presented before us fully on oral argument, and after the filing of some additional briefs was submitted for our decision.

We consider the procedural questions first. In so doing, while some of these questions are raised by defendant Luke and others by defendant Moore, since they apply equally to both defendants, we shall, for the sake of clarity, assume that each defendant has raised all the points and discuss them in their logical order on this theory. The first is the special appearance for the purpose of objecting to the jurisdiction of the court to entertain the proceeding. This objection is based upon several grounds (a) that the proceeding is one to determine who are entitled to the offices of tax commissioner, and that the complaint is of such a nature that no judgment could possibly be rendered adjudging who are entitled to the offices, if it be held that defendants Luke and Moore are not so entitled; (b) that it is in reality an election contest which requires a recount of the ballots and that the statute provides a different proceeding for that purpose; and (c) that, even assuming the court has the right to take original jurisdiction of the proceeding, there is no reason why this court should exercise that right. It is therefore necessary for us to consider the nature of the action. The subject of *quo warranto* is dealt with by sections 4405 to 4409, inclusive, Revised Code of 1928. These sections read as follows:

"§ 4405. *Attorney general may bring; venue; against whom.* An action may be brought by the attorney general in the name of the state upon his relation, upon his own information, or upon the verified complaint of any person, in the supreme court, in cases where that court has jurisdiction, or otherwise in the superior court of the county having jurisdiction, against any person who usurps, intrudes into or who

unlawfully holds or exercises any public office or any franchise within this state, and he shall bring such action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised.''

''§ 4406. *By county attorney or by claimant upon leave.* An action may be brought by the county attorney, in the name of the state, upon his own information or upon the verified complaint of any person, in the superior court against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within his county and he shall bring the action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised.''

''§ 4407. *Interested party may bring action when officers refuse.* If the attorney general or the county attorney shall refuse to bring such action upon the information or at the request of any person claiming such office or franchise, such person may apply to the court for leave to bring such action in his own name, and may so bring the same if leave therefor be granted. Notice of such application shall be given to the attorney general or the county attorney as the case may be.''

''§ 4408. *Adjudication of office; damages; several claimants.* When such action involves the right to an office, the complaint must show the one who is entitled to the office, and the issues made thereon shall be tried, and the judgment rendered shall adjudge who is entitled to the office. If judgment be rendered upon the right of the person so alleged to be entitled, in favor of such person, he may recover the damages which he shall have sustained by reason of the usurpation of the office by the defendant. When several persons claim the same office or franchise, one action may be brought against all such persons to try their rights to such office or franchise.''

''§ 4409. *Judgment of usurpation; fine.* When a defendant is adjudged guilty of usurping or intruding into or unlawfully holding any office, franchise or privilege, judgment shall be rendered that such defend-

ant be excluded from the office, franchise or privilege. The court may also, in its discretion, impose upon the defendant a fine not exceeding two thousand dollars, which fine, when collected, shall be paid into the state treasury.''

We think a careful examination and comparison of the sections shows clearly that two classes of actions are provided for thereby, the first being one by the Attorney General in the interest of the state, where it is claimed any person unlawfully holds or exercises a public office. This is not an action to determine which of two rival claimants is entitled to an office, but deals solely with the question of whether the person exercising the office does so unlawfully. Its purpose is to protect the public interest by preventing one who is not entitled to an office from exercising it, and not to establish the private right of some citizen, if there be one, who is legally entitled to the office. It may be commenced by the Attorney General on his own information or upon the verified complaint of any person. And in such an action the judgment to be rendered is that the defendant be excluded from the office, nothing being said about the rights of any claimant thereto. Section 4407, however, contemplates a very different proceeding. It is not based on the protection of a public interest primarily, but on private rights, and in such an action there must be some person claiming the office or franchise which is being unlawfully held. The party so claiming must first make application to the Attorney General, and, if the latter declines to bring the action, the claimant, upon leave of court, may bring it in his own name. The complaint must show the one who is entitled to the office, and the judgment, instead of being one merely excluding the unlawful holder, in addition adjudges who is entitled to the office and grants damages to that person for its usurpation. In the case of

*State* v. *Boehringer,* 16 Ariz. 48, 141 Pac. 126, 127, we had occasion to consider the nature of the *quo warranto* actions provided by our statute. What we said referred to a county office, but obviously the same situation applies when a state office is involved:

"Since statehood the suit to try the title to a county office must be brought by the county attorney of the proper county in the name of the state upon his own information, or upon the verified complaint of any other person presented to the county attorney, informing him of the facts justifying the bringing of the action. In either case the suit must be brought in the name of the state. When the county attorney brings the suit upon his own information, or upon the verified complaint of any other person, the only condition the law makes to his bringing the action is that he, as such officer, must legally believe that a public county office has been usurped, intruded into, or is being unlawfully held. When he so believes, the law makes the bringing of the suit in the name of the state the officer's public duty. Under such circumstances, no leave of the court to bring the suit is required. *Such suit is a public action, and the public is the real party in interest.* The public prosecutes its suits in the name of the state to redress all public wrongs, civil as well as criminal. *If, however, any person is claiming the right to such office, and is deprived thereof by such usurpation or intrusion, he may bring such action in his own name, by first applying for and obtaining the leave of the court to do so.* Such right is granted a party by the statute. The evident purpose of the statute is to permit the person, who has suffered a special injury by reason of the usurpation of, or intrusion into the office, to recover the rights personal to him and not suffered by the public. If he has been deprived of an office rightfully belonging to him, the public generally has suffered a wrong thereby, and he who is deprived of the office has suffered a wrong done especially to him individually and independently from the public wrong, and the law furnishes such person with this remedy for a redress of his personal wrong suffered." (Italics ours.)

■ Upon an examination of the complaint, it is evident that, if paragraph VIII thereof be stricken, the action is unquestionably brought in the public interest under section 4405, *supra,* and it would not only be unnecessary, but improper, to go into the question of whether any other persons than the defendants were entitled to the offices involved. Paragraph VIII of the complaint does allege that H. H. Hotchkiss was appointed by the Governor of Arizona to fill the vacancy which it was claimed existed on the Tax Commission, and that he had requested the defendants to vacate their offices so that he, claiming one of such offices, might exercise it. The prayer for relief, however, does not ask that the court determine who are entitled to the offices under 4408, neither is the complaint brought in the name of Hotchkiss, as provided by 4407. We think, therefore, that paragraph VIII should be disregarded as surplusage, it being the evident intent of the complaint merely to determine that defendants Moore and Luke are not entitled to the offices, and not to establish who is entitled thereto, and for this reason Hotchkiss not only was not a necessary party to this action, but was not even a proper one.

■ Nor do we think that this is, in effect, an election contest. Counsel, in raising this contention, overlook the fact that this action was not brought for the benefit of a private individual claiming an office, but in the interest of the state to protect it from having two of its important offices administered by those who have no right thereto.

■ ■ So far as the right of this court to take original jurisdiction of this case is concerned, the Constitution expressly grants it. Article 6, § 4, Constitution of Arizona. And, indeed, defendants do not so much question our *right* of jurisdiction, but contend rather that it should not be exercised in this case. We

think the fact that two of our most important state offices are involved in this proceeding, and that it is in the interest of public business that there should be a final determination of whether the *de facto* tax commissioners are also *de jure* officers as speedily as possible, would alone justify us in exercising our jurisdiction, rather than leaving the case to the necessarily more tedious process of an original action in the superior courts, followed by an appeal to this court, which would undoubtedly be taken, no matter what the decision of the lower court.

What we have said disposes not only of the special appearance to question the jurisdiction, but also of the motion to vacate the order of citation, and that to bring in other parties.

■ The next point is a motion to make more definite and certain. The complaint alleges in paragraph VI, subdivisions (e) and (f), as follows:

"(e) That contrary to said section 1213, Revised Code of Arizona, 1928, the qualified electors who voted at said election were instructed to mark, and did mark, more names on the ballots used at said election than there were persons to be elected to the office of member of said State Tax Commission, which said ballots were counted and canvassed in determining the total votes cast for the office of member of said State Tax Commission at said election.

"(f) That contrary to the provisions of section 1229, Revised Code of Arizona, 1928, the names of more persons were designated for the office of member of the said State Tax Commission on all of the official ballots used at said election than were to be chosen for such office at said election, which said ballots were counted and canvassed in determining the total votes cast for the office of member of the State Tax Commission at said election, and that none of said names so designated on said ballots was rejected."

The motion to make more definite and certain requests that the complaint show just how many persons

were designated on the official ballot, and just how many of the electors voted for one and how many for more than one at the election. The information desired, so far as it is possible to secure it, is based on the public records of the state and is just as available to defendants as to plaintiff, and, in view of our opinion as to the law of the case, the exact number of electors voting for each candidate is immaterial. The motion to make more definite and certain is therefore denied.

The special demurrer on the ground that this is an action to establish the title of Hotchkiss to the office and that no vacancy existed in the office of the State Tax Commission when he was appointed is also determined by our ruling on the objection to the jurisdiction of the court.

This disposes of the special motions and objections, and we come next to the general demurrers to the complaint. They are based on several grounds: (a) That the statutes of Arizona provide the exclusive proceeding for a contest of election, and that this is, in effect, such a contest; (b) that it appears that the plaintiff is not the real party in interest; (c) that plaintiff's cause of action is barred by laches and limitation; (d) that the allegations of the complaint show affirmatively that neither of defendants usurped, intruded into nor unlawfully held nor exercised the office of tax commissioner; and (e) that, so far as defendant Moore is concerned, it appears affirmatively from the allegations of the complaint that he received the highest vote at said election, and that a certificate of election was duly issued to him by the Secretary of State, as required by law, after the election of 1932. We consider these grounds of objection to the complaint in their order.

So far as (a) and (b) are concerned, they are determined by our decision that this is not an election contest between two individuals to determine who is

entitled to an office, but an action on behalf of the state to remove those who unlawfully hold and exercise certain public offices within the state. Point (c) would be well taken were this a contest on behalf of a private individual, but, as we have said, it is not, and, when the public interest is concerned, neither laches nor the statute of limitations applies against the state, in the absence of a statute expressly allowing such defenses. Section 2056, Rev. Code 1928; *State ex rel. Veale* v. *Paul,* 113 Kan. 412, 214 Pac. 425. Under (d) it is urged that the facts pleaded do not show usurpation, intrusion, illegal nor invalid entry into the office. Assuming, for the sake of the argument, that this be true, the statute not only bases upon usurpation, intrusion and illegal entry into an office, but also upon the unlawful holding and exercising thereof, and it is evident that there is a great difference between a usurpation of or intrusion into an office, and a mere unlawful holding or exercising thereof. If it be true that the election of tax commissioners in the year 1932, though believed by defendants to be valid, was in reality void, then, even though the certificate of election issued by the Secretary of State might protect them against a charge of usurpation of or intrusion into the offices which they claim, it certainly could not be held to protect them against a charge of unlawfully holding and exercising such offices. Point (e) raises the vital issue upon which the case turns, to wit, whether under the allegations of the complaint the election held in 1932 for the purpose of choosing tax commissioners was void or valid as to either or both of the defendants herein. These allegations, so far as material, may be summarized as follows:

A primary election was held in the state of Arizona on the 13th of September, 1932, for the purpose of nominating candidates for the various offices to be filled at the general election in November of that year,

and at such primary defendants Luke and Moore, together with E. A. Hughes and M. L. Morgan, were candidates for nomination by the Democratic Party to the office of member of the State Tax Commission. In said Democratic primary there was cast a total of 128,898 votes for tax commissioner, of which defendant Moore received 43,381, defendant Luke 33,072, E. A. Hughes 23,851, and M. L. Morgan 21,594. There were also 23,726 votes cast for the office of tax commissioner in the Republican primary which was held on the same date, and of which votes Ernest R. Hall received 12,541 and Ralph L. O'Neil 11,185. Following the canvass of the votes of the primary, the Secretary of State issued certificates of nomination, as candidates of the Democratic Party for the office of tax commissioner, to each of defendants Moore and Luke, and also issued certificates of nomination, as candidates of the Republican Party, to Ernest R. Hall and Ralph L. O'Neil; the Democratic Party and the Republican Party each, therefore, having two candidates at the general election in November, 1932, for the office of member of the State Tax Commission. On the 7th of October the Honorable George W. P. Hunt, then Governor of Arizona, issued his proclamation calling for a general election to be held on the 8th of November, 1932, and in said proclamation stated that there were to be elected at said general election two persons to the office of state tax commissioner. The Secretary of State certified to the various clerks of the boards of supervisors of the state the names of the defendants, together with those of Hall and O'Neil, as candidates, respectively, of the Democratic and Republican Parties for state tax commissioners, and the names of all four of these candidates appeared on the official ballots as candidates for tax commissioner, and each of the official ballots carried the instruction to the electors that they should vote

for two candidates for tax commissioner. The official returns of the general election showed that there was a total of 131,663 votes cast and counted at the general election for the office of tax commissioner, and of these votes defendant Moore received 52,899, defendant Luke received 47,574, Ernest R. Hall received 19,519, and Ralph L. O'Neil 11,671. Nowhere is there any allegation in the complaint that at the primary or general election, or at any stage in the proceedings, the electors were advised that one of the commissioners was to be chosen for a full six-year term and the other for the unexpired four years of another and different term. Nor is it alleged any of the electors in marking their ballots made any such differentiation thereon. Thereafter, the Secretary of State issued certificates of election to each of defendants Moore and Luke. The complaint states that these certificates each stated that the holder thereof was elected for the term beginning January 1, 1933, and ending January 1, 1939, while defendants' answers contend there was no reference to the length of term contained therein. This difference, however, is immaterial.

According to the allegations of the complaint, defendants were elected in 1932 for terms of six years, were given certificates of election, and qualified and entered upon the performance of the duties of the office. No one—the state nor any private person —has heretofore ever questioned, by contest or *quo warranto* or otherwise, the legality of their election or their acts. Whatever the law may be elsewhere, here in Arizona, even though one's original election or appointment to an office is illegal and void, once he has qualified and entered upon the performance of its duties, there can be no vacancy in such office during the period for which such appointment or election may by law be made, except upon the happening of one of the events enumerated in section 94, Revised Code of

1928. The contention here is that their election in 1932 was void. Among the events enumerated in section 94 that may effect a vacancy before the expiration of the term to which one is elected or appointed is "the decision of a competent tribunal declaring void his election or appointment." No officer ·nor tribunal other than the courts may determine whether an election or appointment is void or not. The purpose of the present suit is to secure a decision of this court as to the legality of the election of defendants in 1932 as tax commissioners. We think there can be but little doubt that such election was illegal and void.

■■ We have held in the case of *Brooks* v. *Kerby*, 48 Ariz. 194, 60 Pac. (2d) 1074, that, as a matter of law, but one tax commissioner could be legally elected in the year of 1932 for a term of six years, but expressly reserved the question of whether or not the vacancy existing as a result of the failure to elect any commissioner whatever in the year 1930 permitted and required the election of a commissioner in 1932 to fill the remaining four years of the unexpired term. It is necessary that we now consider that reserved question.

Article V, section 8, of the Constitution reads as follows:

"When any office shall, from any cause, become vacant, and no mode shall be provided by the Constitution or by law, for filling such vacancy, the Governor shall have the power to fill such vacancy by appointment."

At the time of the adoption of the Constitution, there were but three classes of elective state officers whose terms exceeded two years in length. These were the judges of the Supreme Court, whose terms were six years, the judges of the superior courts, whose terms were four years, and the members of the Corporation Commission, whose terms were six years in length.

The Constitution itself carefully provides that, in case a vacancy occurs in any of these offices, the Governor shall fill the vacancy by appointment, but at the next regular election someone shall be elected to fill the remaining portion of any term which has not expired by operation of law. It thus appears that it was the policy of the makers of the Constitution that no appointment by the Governor to fill a vacancy should extend beyond the first Monday in January following the next regular biennial election. Chapter 23, sections 1, 2, and 3, of the Session Laws of 1912, created the Tax Commission. It was, therefore, a legislative and not a constitutional body, and, under the provisions of the Constitution aforesaid, the legislature had the right to provide for any method it saw fit of filling vacancies which might occur on the commission. The act of 1912 provided originally for the appointment of commissioners whose terms expired in such a manner that each of their elected successors would hold for a full term of six years, one term beginning January 1st of each odd-numbered year, but made no special and explicit provision as to how vacancies occurring in the regular six-year terms thereafter should be filled. The only reference to the filling of such vacancies was in the following language:

"The member of the Commission having the shortest time to serve, and not holding his office *by appointment or by election to fill a vacancy,* shall be chairman of said commission." (Italics ours.)

Were it not for the sentence quoted, the Governor, under the constitutional provision above set forth, would fill the vacancy for the remainder of the unexpired term. It is evident, however, from the language used by the legislature, that it contemplated the contingency arising that there might be an "election to fill a vacancy" on the commission. If we are to give this language any effect whatever, and not disregard

it entirely as surplusage, it must be held that a vacancy on the Tax Commission may sometimes be filled by election, and the only reasonable and, indeed, the only possible practical application which can be given to such a construction is that the legislature, knowing that the only elective state offices existing at the time the Tax Commission was created had vacancies arising in their regular term, filled first by the Governor and then, if the term had not yet expired by the next regular biennial election, by the election of someone to fill the remainder of the unexpired term, contemplated and intended that vacancies in the Tax Commission should be filled in the same manner. This conclusion is in harmony with the general spirit and provisions of the Constitution, with the obvious intent of the legislature, and with the general principles of democracy, which require that offices which are elective in their nature should, so far as practicable, be filled by election. I am of the opinion, therefore, that, when a vacancy occurs in the office of tax commissioner, it is the right and the duty of the Governor to fill such vacancy by appointment until the 1st day of January of the next odd-numbered year, and, if the six-year term of office will not expire then, the remainder of the term is to be filled at the immediately preceding biennial election in the same manner as vacancies are now filled in the office of judge of the Supreme Court, judge of the superior court, and corporation commissioner.

We take judicial notice that no tax commissioner was elected in the year 1930 to fill the term which began by law on the 1st of January, 1931, and ended December 31, 1936. On January 1, 1931, there was a vacancy in that term, which could have been filled until January 1, 1933, by the then Governor. He failed to exercise that power, and thus the tax commissioner whose term had just expired held over auto-

matically till the vacancy was legally filled. But, since no one had been legally elected in 1930 for the full term beginning January 1, 1931, it was the duty of the proper officers, when the calls for the primary and general elections in 1932 were made, to arrange for the election (a) of a tax commissioner for the full term of six years, beginning January 1, 1933, and (b) for the election of a tax commissioner for that portion of the term beginning January 1, 1931, which had not expired, and in so doing to provide a method whereby the electors would understand clearly that one of the commissioners for whom they were to vote was to hold for four and the other for six years, and whereby they might select which they preferred for the long term and which for the short term. The proper officials did call for an election of two tax commissioners, but neither in the primary nor in the general election did they provide for any method whereby the electors could differentiate between the candidates and signify which they desired nominated, and later elected, for the full term and which they desired nominated, and later elected, for the unexpired term. The canvass of votes in no manner indicated the desire of the electors on this point, nor did the certificates issued by the Secretary of State suggest which of defendants was elected for the four and which for the six year term. What is the legal effect of such a situation upon the election? Similar situations have arisen in other states, and, so far as we are able to ascertain, the decisions are practically unanimous as to their effect. It is the undoubted rule that, although the title of officers be the same, yet, if they serve for different terms, the offices are different. *Page* v. *Kuykendall*, 161 Ill. 319, 43 N. E. 1114, 32 L. R. A. 656; *Chamberlin* v. *Hartley*, 152 Pa. 544, 25 Atl. 572; *Appeal of Milligan*, 96 Pa. 222. There were, therefore, two different offices of Tax Commission which should

have been filled at the election in 1932, to wit, one for the term ending December 31, 1936, and one for that ending December 31, 1938. But there was no manner provided whereby the electors could signify which candidate they wished to fill the one office and which candidate they wished to fill the other, nor does it appear any elector tried to signify his wish on this point. It is therefore impossible to determine by the certificates of election issued, by the returns in the office of the Secretary of State, nor even by a count of the ballots themselves (were such a thing now possible), who was elected for the one term and who for the other. And the authorities are generally to the effect that, when such a situation exists, the election must be held void on account of uncertainty, for any conclusion as to who was elected for either term would and could only be the result of the rankest surmise and speculation. *Edes* v. *Haley,* 94 Wash. 232, 162 Pac. 50; *Commonwealth* v. *Clark,* 249 Pa. 109, 94 Atl. 473; *Wilson* v. *Blake,* 169 Cal. 449, 147 Pac. 129, Ann. Cas. 1916D 205; *Baker* v. *Conway,* 214 Ala. 356, 108 So. 18; *Watson* v. *Gattis,* 188 Ark. 376, 65 S. W. (2d) 911. Indeed, so far as we are aware, the only cases which even appear to take the contrary view, such as *Gilbert* v. *Lucas,* 139 Ky. 552, 107 S. W. 751, and *Hobbs* v. *Upington,* 121 Ky. 170, 89 S. W. 128, are based on the theory that, when several officers are to be chosen at one election for terms of different length, *if the candidates agree among themselves as to which shall hold the long and which the short term, they will be estopped in any contest between them from repudiating their agreement.* These cases might be worth consideration were the dispute here between the defendants Moore and Luke as to which was chosen for the four and which for the six year term, but, as we have said, this is not such a case, nor even one where there is a dispute between the defendants and Hotchkiss. This

is a proceeding in the interests of the state itself brought, not for the purpose of securing someone to perform the duties of an office regardless of by what right he claims it, but to compel the exclusion of someone from an office to which he has no legal right, and certainly no agreement between two parties, neither one of whom was legally chosen to the office, even if it did exist and were pleaded, could affect the right of the state to do this.

I am of the opinion, therefore, that the election of 1932 was void so far as the offices of tax commissioner were concerned, for the reason that it cannot be determined who the electors of the state desired to serve for the six-year and who for the four-year term. The complaint, therefore, states a cause of action. Such being the law, it necessarily follows that the answers of defendants Luke and Moore did not state a defense to the allegations of the complaint, for they do not claim that there was anything in the election as called nor in the ballots as printed and marked which would indicate the choice of the voters for the two different offices which were to be filled in the election of 1932. What then, is the judgment which must be rendered? Under section 4409, *supra,* it is that the defendant be excluded from the office in question. The four-year term expired by operation of law December 31, 1936, and no judgment is now necessary excluding either defendant therefrom. We know defendant Luke was chosen at the election held in November, 1936, to fill the six-year term beginning January 1, 1937, and has qualified for said term. Regardless, therefore, of whether he had previously claimed the four or six year term, he is out of the case, for his acceptance of the new term would be a resignation of any future rights by virtue of the election of 1932. *Campbell* v. *Hunt,* 18 Ariz. 442, 162 Pac. 882.

██  Since the Tax Commission is a legislative, and not a constitutional, body, it is competent for the legislature to determine under what circumstances the office of tax commissioner shall become vacant and to fix the date of the vacancy, and it has done so in section 94, Revised Code of 1928 as follows:

"An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: . . . the decision of a competent tribunal declaring void his election or appointment."

We hold in the present case that the attempted election of a tax commissioner in 1932 was void. The six-year term, therefore, by the express terms of the statute, becomes vacant òn the date of the decision of this court holding void the election of 1932, and, since an appointment cannot be made to fill a vacancy before the vacancy exists, there is now a vacancy existing in the six-year term.

Section 95, Revised Code of 1928, provides that, whenever the election of an officer is declared void, the body before whom the proceedings were had must give notice thereof to the officer with power to fill the vacancy. This is the Governor of the state who, under the Constitution and the law, has the power to fill the vacancy in the office of Tax Commission for the term ending December 31, 1938, as of the date of this judgment.

██  In deciding whether one is lawfully occupying an elective office, it is always the purpose of the court to give effect to an election where this can be legally done, and we regret exceedingly that for the foregoing reasons the court cannot do so in this instance. However, the Governor, in the exercise of his discretion, may consider matters which we, as a court, cannot, and, if he concludes that defendant Moore is morally, though not legally, entitled to hold the vacant

office for the balance of the term, we know of no reason why he may not act in accordance with such conclusion.

It is the judgment of the court that defendant Moore be, and he is hereby, declared excluded from the office of tax commissioner for the term ending December 31, 1938, and that the Governor of Arizona be advised of our judgment and the date thereof, to wit: February 1, 1937.

McALISTER, C. J., and ROSS, J., concur.