218 P.2d 721

### GARCIA v. SEDILLO.

No. 5247.

Supreme Court of Arizona.

May 22, 1950.

Ralph Estrada, of Phoenix, for appellant.

Gregorio Garcia, in personam.
Fred W. Fickett, Robert S. Tullar, of Tucson, for appellee.

STANFORD, Justice.

The parties to this action are members of the Alianza Hispano-Americana, a fraternal benefit society organized under the laws of the State of Arizona.

Beginning the 16th day of August, 1948, a quadrennial convention was held by said organization in Tucson, Arizona. On the 20th day of August there was held an election to choose a president and nine directors of the organization. There were present at the convention 19 delegates sent there by their subordinate lodges and 9 directors, making a total of 28 entitled to vote in the election. Two candidates were nominated for the position of supreme president, the appellant herein and the appellee, the incumbent president. Balloting was taken by writing the name of the person voted for upon a slip of paper and placing it in the ballot box. At the conclusion of the voting and the counting of the ballots the election board announced that the appellant had received 12 votes and the appellee had received 16

votes. Upon the announcement of the results of the ballots appellant claims to have made a motion for a recount of the ballots. In any event a commotion and heated discussion arose at which time Francisco Cardenas, an election judge, immediately took the ballots from the election table and put them in his pocket. Peace officers were called to the convention hall and a recess was declared. Immediately thereafter 12 of the delegates and 7 of the members of the board of directors left the convention hall and met in another room of the convention building, secured a notary public and an affidavit was prepared and signed by all of them to the effect that each had voted for appellant Gregorio Garcia for president of the organization. The affidavit also stated that the one holding the ballots, Francisco Cardenas, failed and refused to produce the same for recount.

On the 24th day of August, 1947, appellant submitted to the county attorney of Maricopa County a verified complaint supported by the aforesaid affidavit with a written request that the county attorney institute an action in quo warranto against C. B. Sedillo (appellee) claiming that the appellee had unlawfully usurped the office of president of the organization herein mentioned and requesting the county attorney to institute an action to oust appellee from said office, but the county attorney refused to bring the action on the ground that the office was a private office and not a public office and that the petitioner had an adequate remedy to him under section 28-305, A.C.A.1939.

This appellant thereafter, but on the same day, applied to the superior court of Maricopa County to grant appellant leave to bring and maintain his action of quo warranto which leave was granted on said date by the Honorable Dudley W. Windes, one of the presiding judges.

On September 20, 1948, motion was made by the Honorable Fred W. Fickett, attorney for appellee, for a change of venue transferring the case to the county of Pima, which motion was granted. The case was tried before that court sitting without a jury, and from a judgment in favor of appellee this appeal was taken.

Since there are 79 findings of fact, coupled with 24 conclusions of law, and 27 assignments of error, in the interest of brevity we must strip the case of many matters that we think are immaterial, yet we will dispose of the vital issue in determining the case. The primary question for us to determine is: Who received a majority of the 28 votes cast for president of Alianza Hispano-Americana' on August 20, 1948?

The record is replete with conflicts upon practically everything about which testimony was offered except the one vital question upon which the determination of this case rests to wit: Who received a majority of the 28 votes cast for president?

It is singular to observe that the entire record is wholly barren of any evidence

as to how any elector actually voted except the persons who signed the affidavit hereinafter set out in this opinion. No such information was sought by counsel for appellee from any one.

During the recess taken at the time of the disturbance over the outcome of the election an affidavit was drawn, as heretofore referred to, and it is as follows:

"State Of Arizona

County of Pima:    ss:   Affidavit

"To Whom It May Concern:

"We, the undersigned, members of the Board of Directors of the Alianza Hispano-Americana, and the duly and legally elected delegates of the various regions of that Society to the 18th National Convention which opened the 16th of August, 1948, hereby state that on this 20th day of August 1948, upon the opening of Nominations for Supreme President, the incumbent President C. B. Sedillo and Greg Garcia of Phoenix, Arizona, were nominated.

That all of us whose signatures appear hereunder swear under oath that we voted for Greg Garcia for the office of President.

"We further state that the election board appointed by C. B. Sedillo, as president, consisted of Francisco Cardenas, Patrocinio Balbuena, and Jose Macias, all known supporters of the C. B. Sedillo. That the said board announced the results as follows: C. B. Sedillo 16 votes, Greg Garcia 12 votes. There being only 28 legally qualified voters in said Convention affiants state that the said election board counted the votes illegally and that Greg Garcia was legally elected President.

"We further state that the President C. B. Sedillo and the Vice-President J. G. Lizarraga of Hermosillo, Mexico, refused to recount the ballots and to have a new election.

"We further state that the ballots were hidden by the said Francisco Cardenas, member of the election board and refused to produce them for a recount.

Signed
P. N. Estrada, Director
J. M. Romero, Director
Jose R. Padilla, Director
A. R. Fuentes, Director
Ramon Polin, Director
J. I. Gandarilla, Director
Manuel Victoria, Director
Greg Garcia, Delegate
Isidoro Leos, Delegate
J. A. Romero, Delegate.

Antonio A. Sotelo, Delegado
Amparo B. Cordero, Delegate
Galileo Martinez, Delegate
A. C. Torres, Delegate
J. L. Venegas, Delegado
Fidencio R. Mejia, Delegate
Antonio Ybarra Sanchez, Delegado
Pablo Moncibaez, Delegado
Raul Navarrete, Delegado

"Subscribed and sworn to before me this 20th day of August, 1949.

"Rebecca Suarez

Notary Public"

The election board consisted of Patrocinio Balbuena, J. E. Macias and Francisco C. Cardenas. As to the manner of voting and counting the ballots we quote from the testimony of J. M. Romero, who testified that he lived in Trinidad, Colorado; that his occupation was case worker on the staff of the Public Welfare Board; that he was a member of the Hispano-Americana; that his credentials had been accepted by the convention and that he was a director in that organization. When he was asked to explain how the ballots were counted, he explained: "A Well, Mr. Macias picked the vote out of the box, called the name that was supposedly written on the ballot, handed it to Mr. Cardenas on the other side; Mr. Cardenas also repeated the name presumably; he gave it to Mr. Balbuena who was on the other side. Mr. Balbuena was seated and I couldn't see him." The same witness testified that after the confusion, and before declaring a recess by the presiding officer, the appellant made a request from the floor of the convention hall protesting the result of the election and asking for a recount of the ballots which was refused. It was then that a recess was declared.

It is fitting at this time for us to state that these delegates and directors who participated in the convention were men of affairs in their respective communities. Most of them were members of many years standing in Alianza, to which organization they were passionately devoted. Of the 19 qualified electors who signed the affidavit heretofore set forth, 8 of them came from California, 5 from Arizona, and 2 each from the states of New Mexico, Colorado and Texas, yet all but one, (who had died in the meantime) appeared at the trial in Tucson presumably at their own expense and their testimony was consistent in that each and all of them stated that they voted for appellant Garcia as stated in their affidavit. The above electors who came to the trial to testify that they had voted for appellant as stated in their affidavit sworn to within a few minutes after the result of the votes was announced, did so in face of the fact that those of them who resided outside of Arizona were under no obligation to do so because they were beyond the jurisdiction of the courts of this state. Significant also is the fact that the appellant's witness Romero testified that after the confusion that occurred after the ballots had been counted, the appellee made this statement from the chair of the convention hall: "We will return to the convention and I may not figure in this election anymore. * * * But you have other good men and I will not turn the Alianza over to Greg Garcia because he is not competent to run it."

In the main most of the assignments of error by appellant were directed to the findings of fact by the trial court. Assignment of Error No. 9 stated: "The

trial court erred in the making of Finding of Fact No. 45 to the effect that Mr. Garcia at no time requested a recount of the election ballots for the reason that the overwhelming weight of the evidence is contrary to the said Finding."

Said Finding of Fact No. 45 reads: "That Mr. Garcia did not, either before or after the aforesaid recess, move, demand or request that the election ballots be recounted."

Also by proper assignment appellant excepted to the making of Finding No. 49 reading: "That at no time during the sessions of the aforesaid Alianza convention did any person move, request or demand that the election ballots be recounted."

The affidavit set out in full herein, and which was made a part of the evidence in the case, has in it this paragraph: "We further state that the President C. B. Sedillo and the Vice President J. G. Lizarraga of Hermosillo, Mexico, refused to recount the ballots and to have a new election."

We hold that the affidavit which was presented immediately after the recess and signed by the 19 delegates and directors fulfilled the requirement as to a request for recount since the affidavit set forth that a recount of the ballots had been refused, and this court holds that the affidavit, itself, supports the testimony given in this case that from the floor of the convention hall the appellant Garcia had specifically asked for a recount, since the affidavit was filed with the organization just after the recess.

As to the matter of appellant first exhausting his remedies within the society before seeking redress in the courts, the trial court's finding No. 72 which reads as follows, "That prior to filing this action, the plaintiff did not file with the Supreme Executive Council or the Board of Directors of the Society any petition or complaint for redress or for relief in connection with the election by the convention of the Supreme President." is without reasonable support in the record. This for the reason that the general laws of Alianza provide no specific remedial procedure within the corporation itself for challenging the honesty of the count announced by the election officials. Where this situation exists the courts are more inclined to entertain a court review in the first instance. Further the law does not require that a party litigant do a futile thing and from a careful reading of the entire transcript we think the only reasonable conclusion that can be drawn is that it would have been futile for the appellant to have pursued any of the steps now suggested by the appellee as there was no likelihood of a fair and impartial consideration of his protest within the society itself.

It is with poor grace that the appellee relies on the trial court's Finding No. 72, supra, insisting that appellant did not file prior to this action with the Supreme Executive Council of the organization a com-

plaint for relief and at the same time appellee takes shelter under the protecting wings of the cases of Hunt v. Campbell, 19 Ariz. 254, 169 P. 596, and Findley v. Sorenson, 33 Ariz. 265, 276 P. 843, 845. Those two cases have reference to public officers, the instant case does not.

Let us see who sinned first and cast the first stone in this case. Probably it was cast when the ballots were received—during the counting—but anyhow the first stone was thrown by the appellee-group when Mr. Cardenas, one of the election judges, instead of depositing the ballots with the recording secretary, admitted placing same in his pocket. That is what precipitated the disgraceful melee.

It seems apparent from the record that the trial court brushed aside the testimony of the 18 delegates and directors who, waiving their privilege of secrecy, voluntarily came great distances to testify under oath that they voted for appellant Garcia. This they did in the face of the fact that they had been advised by a letter from counsel for the appellee that they were under no obligation to come to the trial since they were beyond the jurisdiction of the courts of this state. It appears that their evidence was rejected largely for the reason the court was of the opinion that inasmuch as the ballots were not available the tally sheet of the count of the votes kept by Mr. Balbuena, one of the election judges, though secondary, was the better evidence. Reliance was had upon our holding in the case of Findley v. Sorenson, supra, to the effect that: "* * * In the absence of the ballots themselves or any testimony of whether they were so marked, and if so, by whom, since the burden of proof is on contestant to show illegality, *the court properly took the return made by the election board of the precinct as conclusive.* Hunt v. Campbell, 19 Ariz. 254, 169 P. 596 * * *." (Emphasis supplied)

The Findley case involved a contest of an election for a school trustee. The ballots of the Lehi precinct had been destroyed before the court ordered them to be produced, hence in order to avoid the rejection of the vote of the entire precinct the court properly invoked the above rule. It should be noted that the statute then in force, section 1009, R.C.A.1928, required: "* * * The poll and tally list shall be furnished by the state superintendent of public instruction, and *must be kept and returned to the board of trustees.*" (Emphasis supplied)

We are of the opinion that the principle announced in the Findley case, supra, has no application to the instant case as there is nothing under the general laws of this fraternal association, or the statutes under which it was incorporated, that requires the election board to make and file with the recording secretary of the lodge a certificate as to their canvass of the votes cast. Nor was it shown that such had been the custom or practice in

the past. Hence a mere sheet of paper with the name of the rival candidates for the office of president and a few tally marks thereon cannot be controlling under the best evidence rule. The fact that as an afterthought appellee had the election judges sign a certificate which he inscribed thereon and had it attested by the two police officers adds nothing to its sanctity. We hold that under the circumstances here shown the better evidence, though secondary, as for whom the votes were cast at the election in question was the sworn testimony of the 28 delegates and directors who were entitled to vote thereat, subject however to impeachment. A great deal of time was devoted to alleged impeachment testimony of the witnesses who testified they voted for Garcia. This attempted impeachment was based upon some statement these witnesses were supposed to have made in the presence of others prior to the election to the effect that they were going to vote for Sedillo for president; or that he was a good man; or that he had made a good president; or statements to this effect. This testimony did not tend to impeach anybody or anything and was improperly admitted in evidence for that purpose. With this character of testimony eliminated there is not a syllable in the entire record that contradicts the statement of such witnesses that they cast their vote for Garcia for president. Even assuming that they made such a statement it cannot be considered

as evidence that they did not thereafter vote for Garcia. If the testimony had been to the effect that they had made statements subsequent to the election that they had voted for Sedillo that would have been proper impeachment evidence for the consideration of the court. It is common knowledge that many voters during a campaign for office make the statements to all the candidates that they intend to vote for them and are working for them when they have no intention of doing either. This they consider to be politic in order that if their candidate is not elected they may then go to the successful candidate and assure him that they had supported him in an effort to remain in his good graces. But it is contrary to human nature for a person to tell one that he is for him for an office whether it be public or otherwise and after he is elected to immediately rise up and repudiate him and proclaim his loyalty for the defeated candidate. If he in fact had ever espoused the cause of the successful candidate, his disposition would be to let him know it through every available channel.

This quo warranto case was instituted by appellant against appellee strictly for the purpose of trying the legal title to the office of Supreme President of Alianza. The learned trial judge erroneously considered that this suit should be determined upon principles of equity. This court has heretofore determined that such

an action is the proper proceeding in which to determine legal title to an office. Abbey v. Green, 28 Ariz. 53, 235 P. 150. We find the law to be that the remedy of quo warranto is of legal rather than of equitable cognizance. 44 Am.Jur., Quo Warranto, secs. 6 and 10. The form and nature of this proceeding is succinctly set forth in 51 C. J., Quo Warranto, p. 312: "*Legal or equitable nature.* Generally speaking, quo warranto proceedings are of legal, rather than an equitable, nature, and *equitable rules are not applicable to them;* but the writ originally issued out of chancery, and in a few states the proceeding in the nature of quo warranto authorized by code or statute is equitable in character." (Emphasis supplied) The Arizona Code, Chap. 28, Art. 3, A.C.A.1939, contains no provisions of an equitable nature.

The testimony shows that after the announcement of the election returns of the canvass of the ballots there was an applause after which the trouble referred to commenced. There is testimony to the effect that as friends of the appellant went to the balloting table Mr. Cardenas, one of the judges, took the ballots and placed them in his pocket. This is not disputed. There is also testimony that the ballots were taken from his pockets by force. This is denied. The ballots were lost or at least have never been found and were not brought into the trial court.

A great deal of the testimony is repititious and immaterial. The appellant had twenty witnesses to testify; the appellee had twenty six. The testimony consisted of 1155 pages and the case required approximately one month to try, during which time the trial court recessed and returned to his place of residence at Globe, Arizona, and would return again to take up the trial.

■ The case presents an unusual matter which makes it one of first impression in our state because in following the well known case of Hunt v. Campbell, supra, the returns of the election board are prima facie evidence of votes cast but the officials in this election were not public officials where we can say that there is a presumption that they acted in good faith and we must rely on the facts presented in the trial court. The affidavit was signed very shortly after appellee was declared elected. It was a spontaneous act on the part of those who signed it.

The lefthand pocket of the trousers of Mr. Cardenas, one of the judges, contained the ballots at the time he was seized upon by friends of the appellant. This court can see no reason why the ballots should be put in such a place for protection for they were the best evidence and indeed the pockets of an election judge is no place at any time for the ballots cast at an election. The fact that this was done by an officer of the election board is proof of the allegations of illegal acts set forth in the complaint of the appellant, and this court cannot see where a fair and just

canvass of the election was held in this instance because of that fact.

We hold that there is no substantial evidence in the record reasonably supporting the finding of the trial court that Sedillo was elected president by a vote of 16 to 12. On the other hand, except for the results announced by the election board, the record conclusively shows that the appellant received 19 votes and the appellee received 9 votes.

It is adjudged that the appellee has been and now is guilty of intruding into and unlawfully usurping the office of Supreme President of the said fraternal benefit society and the rights, privileges, emoluments and remuneration of said office, and it is ordered that he be and is ousted from the said office and required to surrender all records, property and emblems thereof;

That it is adjudged that appellant was duly elected Supreme President of said fraternal benefit society and entitled to said office together with all the rights, privileges, emoluments and remuneration thereof.

The judgment of the superior court is reversed with instructions to enter judgment in accordance herewith.

LA PRADE, C. J., and UDALL, PHELPS, and DE CONCINI, JJ., concur.