[Civ. No. 33639. First Dist., Div. Two. Feb. 11, 1975.]

LINCOLN PROPERTY COMPANY NO. 41, INC.,
Plaintiff and Respondent, v.
ARTHUR LAW, Defendant and Appellant; CITIZENS COMMITTEE
FOR THE PRESERVATION OF THE SAN CARLOS FOOTHILLS,
Movant and Appellant.

COUNSEL

Melvin C. Kerwin, Frederick L. Lyon and James M. Himmel for Defendant and Appellant and for Movant and Appellant.

William D. Esselstein as Amicus Curiae on behalf of Defendant and Appellant and Movant and Appellant.

Hession, Creedon, Hamlin, Kelly, Hanson & Farbstein, Paul F. Kelly and Gordon E. McClintock for Plaintiff and Respondent.

OPINION

KANE, J.—Arthur W. Law and the Citizens Committee for the Preservation of the San Carlos Foothills ("Committee") appeal from the lower court's judgments granting a preliminary and permanent injunction, and from certain court orders denying motions to intervene and to set aside judgment pursuant to Code of Civil Procedure, section 473. The facts relevant to the present appeal may be summarized as follows:

Respondent, a real estate developer, acquired a tract of land commonly known as "Lands of Roth" in the City of San Carlos ("City"). The property in question was annexed to the City in 1968 and was zoned Planned Community (PC). In 1969 the City council approved a development plan for William Roth, the previous owner, which plan, however, was never completed.

Following the acquisition of the land by respondent, in December 1971, the City planning commission adopted a new development plan for the tract, prescribing a number of conditions with respect to the detailed plan to be prepared by respondent. The new plan, which specified a development of smaller magnitude than previously approved, and in which no zoning changes were proposed, was adopted by the City council on January 24, 1972. The plan was extensively discussed at public hearings both before the planning commission and the City council.

In compliance with the conditions set forth in the new plan, in May 1972 respondent submitted a precise plan of development, a grading plan, and a tentative subdivision map to the City for approval. After a public hearing in which counsel for appellants also participated, by a resolution handed down on December 11, 1972 ("December Resolu-

tion"), the City council approved the precise plan, the tentative subdivision map and the grading plan submitted by respondent. On January 9, 1973, the Committee, an unincorporated association, filed a referendum petition with the City clerk requesting that the December Resolution be repealed or submitted to a vote of the people at a regular municipal election or a special election to be called for this purpose.

Thereafter, on January 29, 1973, respondent, as a taxpayer, initiated the present lawsuit seeking to enjoin the City and its officers from conducting an unlawful referendum election (first cause of action), and to restrain the named private individuals from circulating the referendum petition and making any further misrepresentations concerning the effects of the December Resolution (second cause of action). The procedural steps following the complaint may be outlined as follows:

On the day of the filing of the complaint the trial court issued a temporary restraining order enjoining the City, its employees and the private individual defendants from the activities complained of. This was followed by a preliminary injunction issued on March 20, 1973. On April 10, 1973, the trial court heard and overruled the demurrer of the individual defendants. On April 20, 1973, the City filed a verified answer admitting the allegations of the first cause of action. On April 24, 1973, respondent filed a request for dismissal of the second cause of action and an application for judgment on the pleadings on the uncontested first cause of action. In acting upon the request, the trial court dismissed the second cause of action and granted a permanent injunction against the City and its employees only. The permanent injunction was issued on April 24, 1973, and entered on April 25, 1973. On this latter date the Committee, which was not a party to the action, filed a motion to intervene. This motion along with a motion to vacate judgment were denied by the trial court on May 10, 1973. The present appeal followed.

Although appellants, joined by amicus curiae, attack the judgments and orders at issue on procedural grounds as well, their primary contention on appeal is that by enjoining the City from processing their referendum petition the trial court violated the fundamental rights secured by article IV, section 1, of the California Constitution, and thereby committed reversible error. We disagree.

■ While it has been generally said that the reserved power of initiative and referendum accorded by article IV, section 1, of the Constitution is to be liberally construed to uphold it whenever reason-

able (*Beck* v. *Piatt* (1972) 24 Cal.App.3d 611 [101 Cal.Rptr. 236]; *Collins* v. *City & Co. of S. F.* (1952) 112 Cal.App.2d 719 [247 P.2d 362]), it is established beyond dispute that the power of referendum may be invoked only with respect to matters which are strictly legislative in character (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71]). Under an unbroken line of authorities, administrative or executive acts are not within the reach of the referendum process (*Wheelright* v. *County of Marin, supra; Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129 [222 P.2d 225]; *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550, 557 [219 P.2d 457]; *Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741, 744 [43 Cal.Rptr. 306]). The plausible rationale for this rule espoused in numerous cases is that to allow the referendum or initiative to be invoked to annul or delay the executive or administrative conduct would destroy the efficient administration of the business affairs of a city or municipality (*Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605, 611 [150 P. 977]; *Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 581 [104 Cal.Rptr. 793]; *Martin* v. *Smith* (1960) 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725]). ██ The narrow issue confronting us, therefore, is whether the December Resolution constitutes a legislative or an administrative act.

In answering this question, we are not without aid. In defining the legislative and administrative functions the cases draw a careful distinction between the two. ██ Accordingly, acts constituting a declaration of public purpose and making provisions for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power. Acts of administration, on the other hand, are those which are necessary to carry out the legislative policies and purposes already declared by the legislative body (*Reagan* v. *City of Sausalito* (1962) 210 Cal.App.2d 618, 621 [26 Cal.Rptr. 775]; *McKevitt* v. *City of Sacramento* (1921) 55 Cal.App. 117, 124). Or, as the court put it in *Martin* v. *Smith, supra,* " ' "*The power* to be exercised *is legislative* in its nature *if it prescribes a new policy or plan;* whereas, *it is administrative* in its nature *if it merely pursues a plan already adopted by the legislative body* itself, or some power superior to it" ' " (italics added; see also: *Valentine* v. *Town of Ross* (1974) 39 Cal.App.3d 954, 957 [114 Cal.Rptr. 678]; *Seaton* v. *Lackey* (1944) 298 Ky. 188 [182 S.W.2d 336, 339]; 5 McQuillin on Municipal Corporations (3d ed.) pp. 213-214).

██ Tested by the foregoing standard, the instant record conclusively establishes that the zoning change which undoubtedly constituted a

legislative act (cf. *Johnston* v. *City of Claremont, supra; Dwyer* v. *City Council* (1927) 200 Cal. 505 [253 P. 932]) took place not in December 1972, but by the adoption of the new plan of development on January 24, 1972. The December Resolution, which is the subject matter of the present litigation, was no more than an approval of the precise plan which, in turn, simply carried out and implemented the purposes and conditions that had been prescribed by the January resolution. This conclusion is in accord with the decision of the trial court,[1] and is · abundantly supported by the record on appeal.[2] ■ It goes without saying that where, as here, the appeal has been taken on the clerk's transcript alone, it is conclusively presumed that the evidence before the trial court was sufficient to support the findings (*Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 841 [108 Cal.Rptr. 415]; *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251]).

■ In sum, we hold that since the legislative objectives and conditions of development were laid down in the January 1972 resolution of the City council and the acts of respondent approved at the December 1972 meeting were done merely to carry out the legislative policies already declared, the December Resolution must be classified as a purely administrative act which is not subject to the referendum process.

In reaching our conclusion we are greatly aided by *Andrews* v. *City of San Bernardino* (1959) 175 Cal.App.2d 459 [346 P.2d 457] (cert. den., 364 U.S. 288 [5 L.Ed.2d 38, 81 S.Ct. 48]), and *Valentine* v. *Town of Ross, supra,* a case recently decided by this court. In *Andrews,* akin to the case at bar, under a community redevelopment law, the city retained the right

---

[1] The pertinent part of the trial court's memorandum decision granting the preliminary injunction reads as follows: "It has been established to the satisfaction of the Court that the action of the San Carlos City Council on December 11, 1972 was administrative and executive. The legislative action of the council which might have been subject to a referendum petition took place in January, 1972. The subsequent actions of the council related to the details of the plan previously established."

[2] Thus, the record indicates that commenting on the precise plan at the December 1972 hearing, Planning Consultant Byce stated inter alia that *"this is a precise plan which was approved previously as a plan of development; . . . the plan that was originally before the Planning Commission and City Council . . . ."* In his sworn statement submitted to the trial court he likewise reaffirmed that *"A new plan of development for this property* [Lands of Roth] *was adopted by the City Council on January 24, 1972.* This was an amended plan of development for the area. . . .

"*On December 11, 1972, the City Council approved a specific plan* of development *which* is accurately represented by the map attached hereto . . . . This map *was* submitted, along with a tentative subdivision map and a grading plan, *to detail the plan of development in a manner that complied with the conditions imposed by the City Council on January 24, 1972.* Said precise plan and grading plan were approved subject to the conditions set forth . . . ." (Italics added.)

to approve the final redevelopment plans. Under that circumstance the court held that the city's ordinance approving such plans was not a legislative act, but instead an administrative or executive function which was unaffected by the power of referendum. In *Valentine,* another case in point, there was a 1967 resolution by which the Town of Ross adopted schematic plans for a flood control project reserving rights to approve the detailed plans later. The detailed plans for the construction were approved by the town council in three steps in 1969 and 1970. Plaintiffs sought a referendum election from Resolution 901 adopted in May 1970. In holding that Resolution 901 was an administrative act, not subject to referendum, the court pointed out that the declaration of public purpose was laid down in the 1967 resolution, and the later resolutions of the town council were but the administrative implementations of the previously declared public purpose, and that the approval of the final detailed plans constituted merely one of the means of accomplishing the primary objective.

We are satisfied that *Millbrae Assn. for Residential Survival* v. *City of Millbrae,* and *Wheelright* v. *County of Marin,* both *supra,* are distinguishable from the case at bench. It appears clear that the holding of *Millbrae* is based upon the circumstance that the later changes amounted to a substantial alteration of the general plan and were therefore tantamount to rezoning of the district. Nothing remotely similar can be found in the case at bench, where the precise plan decreased—rather than increased—the general size of the buildings (cf. *Millbrae Assn. for Residential Survival* v. *City of Millbrae, supra* at pp. 245-246). In *Wheelright,* the decisive factor was likewise a substantial change whereby a later ordinance approved a plan for an access road to the rezoned area which had not even been considered in the earlier adopted master plan. As emphasized before, in the case at bench all the changes that the December Resolution approved had not only been considered, but also prescribed by the January plan.

In view of our conclusion, the additional issues raised in appellants' briefs, i.e., denial of motion to intervene, denial of motion to set aside judgment under Code of Civil Procedure, section 473, etc., become inconsequential and need not be discussed.

The judgments and orders are, and each is, affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 13, 1975, and the petition of all the appellants for a hearing by the Supreme Court was denied April 16, 1975. Sullivan, J., did not participate therein.