942 P.2d 428

STATE of Arizona ex rel. Grant WOODS, Attorney General, Petitioner.

v.

Michael BLOCK, Ralph Pew, and Steven J. Twist, in their official capacity as Members of the Arizona Constitutional Defense Council, Respondents.

No. CV–96–0461–SA.

Supreme Court of Arizona, En Banc.

July 15, 1997.

Grant Woods, Attorney General by W. Mark Sendrow, Assistant Attorney General, Nancy M. Bonnell, Assistant Attorney General, Phoenix, for Petitioner.

Scott Harshbarger, Massachusetts Attorney General by Thomas H. Green, Assistant Attorney General, Boston, MA, for Amicus Curiae Attorneys General of the States of Massachusetts, California, Colorado, Connecticut, Florida, Guam, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, Texas, Utah, Vermont, Virgin Islands, Washington, and Wyoming.

Michael K. Block, in Propria Persona, Phoenix. W. Ralph Pew, in Propria Persona, Mesa. Steven J. Twist, in Propria Persona, Scottsdale, Scottsdale—and—Bryan Cave L.L.P. by Neil Vincent Wake, Phoenix—and—Cooper and Carvin, P.L.L.C. by Charles J. Cooper, Washington, DC—and—Shaw Pittman Potts & Trowbridge by Michael W. Kirk, Washington, DC, for Respondents.

## OPINION

MOELLER, Justice.

### FACTS

In 1994, the Arizona Legislature created the Arizona Constitutional Defense Council ("CDC"). A.R.S. § 41–401 (Supp.1996). CDC's stated purpose is "restoring, maintaining, and advancing the state's sovereignty and authority over issues that affect this state and the well-being of its citizens by taking any action it deems appropriate." A.R.S. § 41–401(B) (Supp.1996). As originally formed, CDC consisted of three members: the Governor or his designee, a member appointed by the President of the Senate, and a member appointed by the Speaker of the House of Representatives. 1994 Ariz. Sess. Laws Ch. 222 (amended version at A.R.S. § 41–401(A) (Supp.1996)). Under the original statute, CDC could direct the Attorney General to initiate any action on its behalf to further its purposes. *Id.* CDC also could hire outside legal counsel, but the Attorney General was required to negotiate contracts with outside counsel and approve all claims for legal fees. *Id.* Additionally, the Attorney General could "direct or assist any council attorney in any manner deemed appropriate by the attorney general to best serve the purposes of the council." *Id.* CDC was appropriated $1 million for 1994–1995 through a revolving fund.

After CDC was formed, the Attorney General was an active participant in decisions by CDC to challenge federal actions. Although the Attorney General and CDC usually worked cooperatively in pursuing litigation, some conflicts arose. In one instance the Attorney General rejected CDC's request to intervene in a federal action because the Attorney General believed intervention was

not in the best interest of the state.[1] On another occasion, CDC's attorneys presented a memorandum to the Attorney General setting forth a strategy for lifting federal court injunctions against prison administrators in Arizona. The Attorney General did not agree with the entire strategy, but did agree to seek certain modifications of the injunctions.

In a case brought and funded mostly by CDC at the request of Arizona's judicial department, the state reached a successful settlement with the United States Department of Justice over four superior court judgeships that had been challenged under the federal Voting Rights Act. Some members of CDC were frustrated with the settlement because it prevented them from asking the United States Supreme Court to resolve certain constitutional issues. Because of the then-existing structure of CDC, it was not able to "take the risk" of trying to bring the case before the Supreme Court and hoping that it would grant jurisdiction. Constitutional Defense Council: Minutes of Meeting (Apr. 22, 1996) (on file with the Secretary of the Senate). Rather, CDC had to yield to the requests of the judicial department and the Attorney General, who supervised the litigation.

Against this background of conflict between CDC and the Attorney General, amendments to the CDC Act were proposed and enacted in the 1996 legislative session. The goal of the amendments was to remove the veto power of the Attorney General and his position as gatekeeper of the funds used by CDC.[2] The amendments removed all power of the Attorney General relative to CDC and added two advisory members to CDC—the Chairman of the House of Representatives Committee on States' Rights and Mandates and the Chairman of the Senate Committee on Government Reform. A.R.S. § 41–401 (Supp.1996). The Attorney General's office informed the Senate Committee on Government Reform that the amendments violated separation of powers by putting the Legislature in a position in which it is both making the laws and carrying out the laws. Senate Committee on Government Reform: Minutes of Meeting (Mar. 12, 1996) (on file with the Secretary of the Senate). The amendments gave CDC authority to initiate and pursue "any action concerning a law, regulation, order, policy or decision of the United States or any agency of the United States, including court rulings, that the council determines will further its purposes." A.R.S. § 41–401(F) (Supp.1996). The amendments permit CDC to pay out funds to outside counsel from the revolving fund without any approval by the Attorney General. The only approval that must be obtained by CDC is for the payment of funds over $50,000, and that approval is from the Joint Legislative Budget Committee. The only other check on the expenditure of funds by CDC is an after-the-fact report of funds spent which is to be submitted each month by the Department of Administration to CDC's members, the President of the Senate, the Speaker of the House of Representatives, the Joint Legislative Budget Committee, and the Governor. A.R.S. § 41–401(I) (Supp. 1996).

After the 1996 amendments, CDC, without any participation by the Attorney General, filed motions on behalf of the State of Arizona in various federal district court proceedings, asserting positions in part contrary to

---

1. A county in Nevada sued the federal government, claiming that the State of Nevada was the true owner of certain lands titled in the federal government. Upon investigation, the Attorney General learned that the State of Nevada disagreed with the county's claim. Moreover, if the county had prevailed, title to land in Arizona would have been clouded.

2. In the meeting of the Senate Committee on Government Reform, "Senator Spitzer stated that under current law there is a veto by the Attorney General's office. He stated that when there is a political disagreement between the parties and when the veto power is used in that instance, it precludes what the Legislature felt was the purpose of the CDC." Senate Committee on Government Reform: Minutes of Meeting (Mar 12, 1996) (on file with the Secretary of the Senate).

At the Committee on Rules meeting, "Mr. Groscost . . . pointed out that the bill removes the Attorney General as the gate-keeper of the funds and replaces him with the Joint Legislative Budget Committee." Committee on Rules: Minutes of Meeting (Feb. 8, 1996) (on file with the Chief Clerk of the House of Representatives).

those being asserted by the Attorney General on behalf of the state in those same proceedings. The Attorney General then filed a petition for special action with this court against CDC and its members. The petition requests us to find A.R.S. § 41–401, as amended, unconstitutional and to prohibit CDC from exercising its purported powers and expending public funds.

## JURISDICTION

This court has original jurisdiction over the issuance of injunctions and other extraordinary writs to state officers. Ariz. Const. art. VI, § 5.1. This case involves a purely legal issue, which is appropriate for resolution by special action in this court. *See Arizona Corp. Comm'n v. State ex rel. Woods,* 171 Ariz. 286, 287–88, 830 P.2d 807, 808–09 (1992); *see also University of Arizona Health Sciences Ctr. v. Superior Ct.,* 136 Ariz. 579, 581, 667 P.2d 1294, 1296 (1983) (The supreme court may appropriately consider matters of important public interest that turn entirely on legal issues in a special action.). The case presents an important constitutional issue involving the doctrine of separation of powers and is a matter of statewide importance. *See Arizona Corp. Comm'n,* 171 Ariz. at 287–88, 830 P.2d at 808–09. For these reasons, we accept jurisdiction of the special action and proceed to the issues presented.

## STANDING OF THE ATTORNEY GENERAL

CDC argues that the Attorney General lacks standing to maintain this action. In response, the Attorney General contends that he has standing under three separate theories: his obligation to uphold the Arizona Constitution, and two statutory grounds— A.R.S. § 12–2041 (action in quo warranto), and A.R.S. § 35–212 (challenging the illegal expenditure of funds). We will separately analyze each of these three contentions in the context of this particular case after discussing the general role of the Attorney General in Arizona.

## I. The Role of the Attorney General in Arizona

In Arizona, the Attorney General has no common law powers; "whatever powers he possesses must be found in the Arizona Constitution or the Arizona statutes." *Fund Manager, Public Safety Personnel Retirement Sys. v. Corbin,* 161 Ariz. 348, 354, 778 P.2d 1244, 1250 (App.1988), *approved in part,* 161 Ariz. 364, 778 P.2d 1260 (1989); *see also Arizona State Land Dep't v. McFate,* 87 Ariz. 139, 142, 348 P.2d 912, 914 (1960). By statute, the Attorney General has been authorized to bring an action in quo warranto against any person "who usurps, intrudes into or unlawfully holds or exercises any public office ... within the state." A.R.S. § 12–2041(A). An action in quo warranto is an extraordinary proceeding, addressed to preventing a continued exercise of authority unlawfully asserted. *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 502, 53 S.Ct. 721, 729, 77 L.Ed. 1331 (1933). Additionally, the Attorney General has statutory authority to bring an action to prevent the illegal payment of monies or to recover monies alleged to be illegally paid. A.R.S. § 35–212.

Arizona also has long considered the Attorney General to be a key player in litigation concerning a statute's constitutionality. A party challenging the constitutionality of a statute must serve the Attorney General, who is entitled to be heard. A.R.S. § 12–1841 (Supp.1996). The statute imposing this requirement was recently amended to provide that if the Attorney General is not timely served with the proper notice, the court, upon motion by the Attorney General, "shall vacate any finding of unconstitutionality and shall give the attorney general a reasonable opportunity to prepare and be heard." *Id.* Although A.R.S. § 12–1841 gives the Attorney General broad power to argue in support of the constitutionality of a statute, it does not mandate him to do so in all cases. He clearly retains discretion not to intervene if he concludes it is appropriate to do so. The Attorney General must support and defend the Arizona Constitution, A.R.S. § 38–231(G) (1996), which is superior to state statutes.

## II. The Attorney General and the Arizona Constitution

The Attorney General first argues that, as the state's chief legal officer, he has a duty "not only to represent his client agencies, but also the duty to uphold the Arizona Constitution." He states that he has "a recognized affirmative duty to challenge statutes." Therefore, he argues, this duty to uphold the constitution gives him an independent ground for standing.

To the extent the Attorney General is arguing that the Arizona Constitution itself grants him independent standing here, we disagree. The Arizona Constitution creates the office of Attorney General but does not undertake to describe the duties of the office. Instead, it merely provides: "The powers and duties of ... [the] Attorney General ... shall be as prescribed by law." Ariz. Const. art. V, § 9.

■ Although the court of appeals held that the Attorney General has standing to challenge the constitutionality of a statute, that holding was based on a statutory, rather than a constitutional, foundation. *See Fund Manager*, 161 Ariz. at 354, 778 P.2d at 1250. In *Fund Manager*, the Attorney General brought an action under A.R.S. § 35–212, challenging the illegal expenditure of funds. *Id.* at 352, 778 P.2d at 1248. The Attorney General contended that the statute which exempted certain contracts for goods and services from the procurement code was unconstitutional. *Id.* at 356, 778 P.2d at 1252. The Fund Manager challenged the Attorney General's standing contending that, because no statute specifically authorized the Attorney General to challenge the constitutionality of a state statute, he could not do so. *Id.* at 353, 778 P.2d at 1249. The court held, however, that the Attorney General had standing to challenge the constitutionality of a statute because the challenge was in support of his statutory authority to prevent the improper expenditure of public funds. *Id.* at 354, 778 P.2d at 1250. We therefore conclude that the Arizona Constitution does not itself give the Attorney General standing to maintain this action. Standing must be linked to some statutory basis.

## III. The Attorney General and A.R.S. § 35–212

■ What we have already said leads necessarily to a conclusion that the Attorney General has standing to maintain this action under section 35–212. Under that statute, the Attorney General "in his discretion may bring an action in the name of the state to enjoin the illegal payment of public monies." A.R.S. § 35–212(A). The Attorney General may use "any ethically permissible argument" to prevent the illegal payment of public monies, including the argument that the statute granting the power to spend the money is unconstitutional. *See Fund Manager*, 161 Ariz. at 354, 778 P.2d at 1250.

■ We have previously discussed the *Fund Manager* case in rejecting the Attorney General's contention that the Arizona Constitution independently authorizes him to maintain this action. *See supra*, Standing of the Attorney General, part II. But although *Fund Manager* is against the Attorney General's contention on that point, it supports his argument under section 35–212(A).

In *Fund Manager*, the Attorney General, Robert Corbin, brought an action against a law firm under A.R.S. § 35–212 for the repayment of funds alleged to have been illegally paid to the law firm by the Fund Manager. The Fund Manager had not complied with the provisions of the procurement code before hiring the law firm; therefore, the Attorney General alleged that payments to the firm were illegal expenditures of public funds. *Fund Manager*, 161 Ariz. at 352, 778 P.2d at 1248. The Legislature then passed SB 1098, which purported to retroactively exempt from the procurement code payments which had been approved by the Fund Manager. *Id.* at 352–53, 778 P.2d at 1248–49. The Attorney General contended that the payments were still illegal because SB 1098 was unconstitutional. *Id.* at 353–54, 778 P.2d at 1249–50. The Fund Manager argued, as does CDC here, that the Attorney General did not have standing to challenge the constitutionality of SB 1098. *Id.* at 353, 778 P.2d at 1249.

The court of appeals, in a portion of its opinion later approved by this court, *see*

*Fund Manager v. Corbin,* 161 Ariz. 364, 778 P.2d 1260 (1989), held that the Attorney General had standing, stating "we are aware of nothing that would disable the Attorney General from attacking the constitutionality of an Arizona statute in the process of exercising his specific statutory powers." *Fund Manager,* 161 Ariz. at 353, 778 P.2d at 1249. Additionally, the court held that "the Attorney General's discretionary power under A.R.S. § 35-212(A) necessarily includes the authority to press any ethically permissible argument he deems appropriate to aid him in preventing the allegedly illegal payment of public monies or in recovering public monies alleged to have been illegally paid." *Id.*

CDC nevertheless argues that the Attorney General lacks standing under A.R.S. § 35-212 because he has not specifically challenged any particular expenditure of funds by CDC. The petition requested an order prohibiting CDC "from exercising its purported powers" because of the unconstitutionality of section 41-401. The primary power granted to CDC is the power to initiate and pursue legal actions. A.R.S. § 41-401(F). For this purpose, CDC "may select and employ attorneys to implement the purposes of this chapter." A.R.S. § 41-401(G). Section 41-401(H) provides the funding for the attorneys hired by CDC. CDC's power to employ attorneys for litigation is meaningless without funding. We conclude that the Attorney General's request to prohibit CDC from exercising its power to litigate necessarily includes a request to prohibit payment for such litigation. This also disposes of CDC's subsidiary argument that the Attorney General did not specifically challenge the expenditure portion of the statute, as distinguished from the statute itself.

Lastly, CDC argues that giving the Attorney General the broad power to challenge the expenditure of public funds based on the unconstitutionality of a statute will give the Attorney General a "global mandate to sue" and will defeat the proposition that the Attorney General does not have common law powers in Arizona but only statutory powers. We are unpersuaded. Had the constitutionality of the CDC statute been called into question in litigation not initiated by the Attorney General, he would have to be notified and would have an unquestioned right to participate in the litigation. *See* A.R.S. § 12-1841 (Supp.1996). We also note the extreme anomaly of denying standing to the Attorney General, whose office is created by the constitution, while the legislatively created CDC claims a mandate to engage, at its sole option, in any and all litigation which it believes will benefit the state.

## IV. The Attorney General and A.R.S. § 12-2041

Under A.R.S. § 12-2041, the quo warranto statute, the Attorney General may bring an action "against any person who usurps, intrudes into or unlawfully holds or exercises any public office or any franchise within the state." A.R.S. § 12-2041(A). The purpose of quo warranto "is to protect the public interest by preventing one who is not entitled to an office from exercising it.... And in such action the judgment to be rendered is that the defendant be excluded from the office...." *State ex rel. Sullivan v. Moore,* 49 Ariz. 51, 57, 64 P.2d 809, 812 (1937); *see also Garcia v. Sedillo,* 70 Ariz. 192, 199-200, 218 P.2d 721, 726 (1950).

If a defendant in a quo warranto action is "adjudged guilty of usurping or intruding into or unlawfully holding an office, franchise or privilege, such defendant is guilty of a petty offense and shall be excluded from the office, franchise or privilege." A.R.S. § 12-2045.

The Attorney General alleges that the members of CDC are unlawfully exercising their office because the legislation creating the office is unconstitutional. In this respect, this case is similar to *Ahearn v. Bailey,* 104 Ariz. 250, 451 P.2d 30 (1969). In *Ahearn,* petitioner (who was not the Attorney General) argued that respondents did not have the right to hold office as members of the Industrial Commission of Arizona because the legislation creating their positions was unconstitutional. The Legislature had changed the structure of the Industrial Commission from three to five members. 104 Ariz. at 252, 451 P.2d at 32. In so doing, the Legislature also shortened the terms of the existing commissioners, which had the effect of unseating the incumbents, thereby violating separation of

powers principles by encroaching upon the authority of the executive branch. 104 Ariz. at 254–55, 451 P.2d at 34–35. The court held that because the legislation was unconstitutional, the new commissioners appointed pursuant to it were ousted and the three incumbent members were declared to be the lawful commissioners. 104 Ariz. at 256, 451 P.2d at 36.

■ In the present case, the Attorney General seeks to prohibit the members of CDC from exercising their purported powers because CDC was created by an unconstitutional statute. Because the relief requested is within the statutory authority of the Attorney General under the quo warranto statute, A.R.S. § 12–2041, the Attorney General has standing to bring this action under it as well as under section 35–212. Having concluded that the Attorney General has standing under both statutes relied upon by him, we do not decide whether he also has standing under A.R.S. § 41–192 and 41–193 as urged by Justice Martone in his concurring and dissenting opinion because, in our view, the pleadings do not squarely place that basis of standing in issue.

## SEPARATION OF POWERS

### I. CDC Is a Legislative Body

The Attorney General's challenge is based on the separation of powers doctrine.[3] The Arizona Constitution, written after generations of experience and experimentation under the United States Constitution, spells out the separation of powers doctrine even more specifically than does the national document.

The Arizona Constitution contains a clause specifically dealing with the separation of powers and precluding any department of government from exercising the powers of any other department. Article III provides:

The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as

provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Ariz. Const. art. III.

■ The roles of each branch of government in Arizona are, therefore, separate and distinct. "The legislature has the exclusive power to declare what the law shall be." *State v. Prentiss,* 163 Ariz. 81, 85, 786 P.2d 932, 936 (1990). In contrast, the executive branch's duty is to carry out the policies and purposes declared by the Legislature. *See Pioneer Trust Co. v. Pima County,* 168 Ariz. 61, 65, 811 P.2d 22, 26 (1991) (citing *Lincoln Property Co. No. 41 v. Law,* 45 Cal.App.3d 230, 119 Cal.Rptr. 292, 294 (1975)). As this court has previously had occasion to observe: "Nowhere in the United States is this system of structured liberty [of separation of powers] more explicitly and firmly expressed than in Arizona." *Mecham v. Gordon,* 156 Ariz. 297, 300, 751 P.2d 957, 960 (1988).

With these principles in mind, we examine A.R.S. § 41–401, as amended. In it, the Legislature declared the purpose and function of CDC. "The purpose of the council is restoring, maintaining, and advancing the state's sovereignty and authority over issues that affect this state and the well-being of its citizens by taking any action it deems appropriate." A.R.S. § 41–401(B). Additionally, "the council may initiate and pursue . . . any action concerning a law, regulation, order, policy or decision of the United States . . . that the council determines will further its purposes." A.R.S. § 41–401(F).[4]

■ This court has emphasized that separation of power between the branches of government requires that "those who make the law be different from those who execute and apply it." *Matter of Walker,* 153 Ariz. 307, 310, 736 P.2d 790, 793 (1987). Because Arizona's Constitution, unlike the United States Constitution, does not contain an appointments clause, a law is not invalid merely

---

**3.** No issue concerning the validity of the statute prior to the 1996 amendments is presented.

**4.** Whether the statute unconstitutionally delegates policy making or is unconstitutionally

vague or broad are issues not raised or decided in this case. *See Tillotson v. Frohmiller,* 34 Ariz. 394, 271 P. 867 (1928).

because the Legislature appoints some of the members of an executive committee. *See Lockwood v. Jordan,* 72 Ariz. 77, 85, 231 P.2d 428, 433 (1951). However, in determining whether the separation of powers doctrine has been violated, the court must evaluate whether the Legislature, through its appointments, has maintained control over an executive agency in violation of separation of powers.

CDC is composed of three voting members and two advisory members: the voting members consist of the Governor or his designee, one member appointed by the Speaker of the House of Representatives, and one member appointed by the President of the Senate. A.R.S. § 41–401(A) (Supp.1996). The two advisory members are "the Chairman of the House of Representatives' Committee on States' Rights and Mandates or its successor committee" and "the Chairman of the Senate Committee on Government Reform or its successor committee." *Id.* No terms are set for the members of CDC, nor are there provisions for removal from office. Thus, the members serve at the pleasure of the person appointing them. This contrasts with other Arizona statutes which provide for gubernatorial appointment of executive or administrative officers or specify the term of appointment. *See, e.g.,* A.R.S. § 41–511 (For the Arizona State Parks Board, the State Land Commissioner is an automatic member and the Governor appoints the other six members for six-year terms.); A.R.S. § 41–519.01 (For the Arizona Conservation Corps Commission, there are three designated members plus six members appointed by the Governor, who each serve three years.); A.R.S. § 45–102 (The Director of the Department of Water Resources shall be appointed by the Governor and serve at the pleasure of the Governor.); A.R.S. § 40–462(B) (The Governor shall appoint the Director of the Residential Utility Consumer Office.); A.R.S. § 40–463(B) (The Governor shall appoint all five members of the Residential Utility Consumer Board.); A.R.S. § 23–101(B) (The Governor shall appoint all five members of the Industrial Commission, who shall each serve for five years.).

Clearly, the Legislature has maintained control of CDC. The Governor has a single appointment. The Legislature, acting through the President of the Senate and the Speaker of the House, appoints the controlling majority of the voting members, who serve at the pleasure of the appointing persons. In addition, two other legislators serve as advisory members of CDC. The only oversight provided for expenditures of CDC is by the Joint Legislative Budget Committee, a legislative body. We conclude that CDC is a legislatively created and controlled body, and that it was intended to be such.

## II. The Applicable Legal Test (*Hancock*) and Its Elements

██ The question, then, is whether CDC, a legislative body, exercises an executive function. The court of appeals has established a test to determine if one branch of government "is exercising 'the powers properly belonging to either of the others.'" *J.W. Hancock Enterprises v. Arizona State Registrar of Contractors,* 142 Ariz. 400, 405–06, 690 P.2d 119, 124–25 (App.1984) (quoting Ariz. Const. art. III). In *Hancock,* the court adopted the test formulated by the Kansas Supreme Court in *State ex rel. Schneider v. Bennett,* 219 Kan. 285, 547 P.2d 786, 792–93 (1976). In *Bennett,* the court stated, "When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented." *Bennett,* 547 P.2d at 792. The court is to evaluate the following factors: the "essential nature" of the powers being exercised, "the degree of control by the legislative department in the exercise of the power," the objective of the Legislature, and the practical consequences of the action, if available. *Id.* This court adopts the test of the court of appeals, agreeing that the test provides "the necessary flexibility to government," yet "preserves the essential goal of the separation of powers theory," to prevent "the concentration of the whole power of two or more branches in one body." *Hancock,* 142 Ariz. at 406, 690 P.2d at 125. Accordingly, we will evaluate A.R.S. § 41–401 under this test.

## A. Essential Nature of the Power Being Exercised

According to A.R.S. § 41–401(F), CDC "may initiate and pursue ... in the name of this state any action concerning a law, regulation, order, policy or decision of the United States or any agency of the United States, including court ruling, that the council determines will further its purposes." CDC argues that it does not perform an executive function because it is not enforcing laws enacted by the Legislature. However, Arizona case law holds that "acts necessary to carry out the legislative policies and purposes already declared by [the Legislature] are administrative." *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 65, 811 P.2d 22, 26 (1991) (citing *Lincoln Property Co. No. 41 v. Law*, 45 Cal.App.3d 230, 119 Cal.Rptr. 292, 294 (1975)). CDC's essential function is to carry out the Legislature's policies and purposes that are specified within the statute itself. *See* A.R.S. § 41–401(B) ("The purpose of the council is restoring, maintaining, and advancing the state's sovereignty and authority over issues that affect this state and the well-being of its citizens by taking any action it deems appropriate.") It is clear that CDC is performing an executive function.

CDC next argues that it does not perform an executive function because, rather than enforcing laws enacted by the Legislature, it is "defending against the federal government's unlawful intrusion in the self-governmental authority of the State." But the executive branch of government has more responsibilities than merely to enforce laws enacted by the Legislature. It is responsible for carrying out the policies and purposes of the Legislature. One of those purposes, as stated in A.R.S. § 41–401, is to restore, maintain, and advance "the state's sovereignty and authority over issues that affect this state and the well-being of its citizens." A.R.S. § 41–401(B). The United States Supreme Court has held that litigation conducted on behalf of the United States is "subject to the direction, and within the control of, the Attorney–General." *Buckley v. Valeo*, 424 U.S. 1, 139, 96 S.Ct. 612, 692, 46 L.Ed.2d 659 (1976) (quoting *Confiscation Cases*, 74 U.S. 454, 458–59, 7 Wall. 454, 458–59, 19 L.Ed. 196, (1868)). In the same respect, conducting litigation on behalf of the state, as authorized by the Legislature, is an executive function, because doing so carries out the purposes of the Legislature. *See Pioneer Trust Co.*, 168 Ariz. at 65, 811 P.2d at 26. Therefore, CDC performs essentially an executive function.

## B. Degree of Control by the Legislature in the Exercise of the Power

The next prong of the *Hancock* test is whether the Legislature's involvement is a cooperative venture or a coercive influence. *Hancock*, 142 Ariz. at 405, 690 P.2d at 124. We have already pointed out that the Legislature retained dominant control over CDC. *See supra* Separation of Powers, part I. The 1996 amendments were clearly intended to enhance the Legislature's control and remove the Attorney General or any representative of the executive from any semblance of control.

## C. The Objective of the Legislature

When evaluating the objective of the Legislature, the court in *Hancock* asked, "Is the intent of the Legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the Legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature?" *Hancock*, 142 Ariz. at 405, 690 P.2d at 124 (quoting *Bennett*, 547 P.2d at 792). Again, the Legislature's actions through its amendments to A.R.S. § 41–401 are relevant. *See supra* Separation of Powers, part I. The Legislature's actions in amending A.R.S. § 41–401 show its intent to take over an executive function by eliminating the Attorney General from the litigation process and adding two members of the Legislature as advisory members to CDC.

CDC argues that appointing two legislative members as advisory members of CDC does not violate separation of powers because the members are not necessary for a quorum and have no voting rights. However, although the members have no voting rights, they still have the ability to influence

the decisions of the board. Otherwise, no purpose exists in having them as members. Allowing members of a legislative body to serve, even as advisory members, on a board that performs an executive function may violate separation of powers. *See Federal Election Comm'n v. NRA Political Victory Fund,* 6 F.3d 821, 826–27 (D.C.Cir.1993), *cert. dismissed,* 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994) (holding that Congress's appointment of the Secretary of the Senate and the Clerk of the House as nonvoting members of the Federal Election Commission violated the separation of powers doctrine).

### D. The Practical Consequences of the Action

In *Hancock,* the court held that a fourth consideration for determining whether a statute violated separation of powers could be "the practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available." 142 Ariz. at 405, 690 P.2d at 124 (quoting *Bennett,* 547 P.2d at 792). Although the amendments had been in effect for only a few months at the time the petition for special action was filed, conflict already existed. CDC claims that no real conflict exists because it is representing the Department of Corrections, its client, with its approval. The Attorney General responds that CDC is responsible for the conflict by undertaking to represent a state agency, whose representation is the responsibility of the Attorney General.

Under A.R.S. § 41–192, "no state agency other than the attorney general shall employ legal counsel or make an expenditure or incur an indebtedness for legal services" except those agencies specifically listed in the statute. A.R.S. § 41–192(E) (Supp.1996). The Department of Corrections is not an exempted agency; therefore, it is not permitted to employ legal counsel other than the Attorney General. CDC, however, is an exempted agency under the 1996 amendment to A.R.S. § 41–192. *See* A.R.S. § 41–192(E)(9) (Supp.1996). Accordingly, the Department of Corrections, which is not allowed to employ outside counsel under A.R.S. § 41–192,

may now employ outside counsel through CDC. A conflict exists because the agency is required to use the Attorney General, and therefore is represented by the Attorney General, but the agency is also represented by CDC, which is not required to use the Attorney General. This result creates more than a theoretical conflict, as is evidenced by the present conflict in federal court between the Attorney General and CDC.

### E. Balancing the *Hancock* Factors

CDC performs an executive function, yet is controlled by members appointed by representatives of the Legislature. This legislative control is in accord with the intent of the Legislature in amending A.R.S. § 41–401 in 1996 to remove any executive control from CDC. The practical result of the legislation is to create conflict between an executive agency and a legislative agency performing an executive function. All of the *Hancock* factors support a finding that CDC is a legislative body performing an executive function. A.R.S. § 41–401 is therefore unconstitutional because it violates the express terms of article III of the Arizona Constitution.

### ARTICLE V ISSUE

The Attorney General also argues that A.R.S. § 41–401 violates article V of the Arizona Constitution by giving away a core function of the Attorney General to CDC. Because we hold that A.R.S. § 41–401 is unconstitutional under article III of the constitution, we do not address the article V argument.

### CONCLUSION

A.R.S. § 41–401, as amended, is unconstitutional because it violates the article III separation of powers clause of the Arizona Constitution. Accordingly, as presently constituted, CDC and its members have no authority to act to carry out their stated purposes or to expend public money to do so. Relief is granted.

ZLAKET, C.J., FELDMAN, J., and RUTH V. McGREGOR, Chief Judge, concur.

JONES, V.C.J., did not participate in this matter; pursuant to Ariz. Const. art. VI, § 3, RUTH V. McGREGOR, Judge of the Court of Appeals, Division One, was designated to sit in his stead.

MARTONE, Justice, concurring, and dissenting in part.

I agree with the court that there is a separation of powers problem here and write separately to state my understanding of the limited nature of our holding. I also write to express my disagreement with the court's resolution of the standing issue.

1. The problem with this statute is that it creates an entity that performs essentially executive functions but remains subject to legislative control. The absence of set terms or other removal provisions for members of the CDC provides the Legislature indirect, yet substantial control over the members it appoints. The same problem existed before the statute was amended. This is the heart of the case. *Ante,* at 435–436.

The separation of powers problem would not have arisen had the statute accorded the Executive Branch of government the majority of appointments on the commission. The Attorney General acknowledged this at oral argument. In the alternative, the statute could have allowed the Legislature to make a majority of the appointments, but given them secure tenure. This alternative would not create an appointments clause violation because, as the court notes, there is no appointments clause in the Arizona Constitution.

2. While I believe there is standing in this case, I do not believe there is standing under either of the statutes upon which the court relies. I believe that the scope of A.R.S. § 35–212 is limited to enjoining the illegal payment of public monies directly. It does not extend to an attack on the constitutionality of an entire state agency, where the expenditure of funds is merely an indirect by-product of a declaration of unconstitutionality. The expenditure of state funds in an action which directly attacks the existence of an agency is too attenuated to support a claim under § 35–212, and therefore, I do not believe there is standing under it.

By extending the scope of the remedy under § 35–212 to support standing here, the court greatly expands the scope of taxpayer suits under A.R.S. § 35–213. If the Attorney General does not bring an action under § 35–212, any taxpayer can bring an action under § 35–213. Thus, by broadening the substantive reach of § 35–212, the court necessarily broadens the substantive reach of § 35–213. A taxpayer can now bring an action to challenge the constitutionality of any state agency even if the taxpayer has no personal stake in the outcome. This undesirable consequence militates against the majority's interpretation of § 35–212.

Nor do I believe there is standing under a *quo warranto* action. An action under A.R.S. § 12–2041 is to be brought against any person who usurps, intrudes, or unlawfully holds a public office. It is a very narrow action against the person holding office, not an action to declare the entire agency unconstitutional. Under A.R.S. § 12–2044, a judgment in *quo warranto* must show who is entitled to the office. The inference is that it is a legitimate office, being held by an illegitimate office holder. By holding that there is standing under *quo warranto* here, the court turns that around and allows a *quo warranto* action to lie against a legitimate office holder holding an illegitimate office. There is no question in this case that Block, Pew, and Twist legitimately hold office. The question is whether the agency in which they hold office is constitutionally valid. I do not believe § 12–2041 supports standing here.

Now having said all of this, I do believe the Attorney General has standing in this case. A.R.S. § 41–192 describes the powers and duties of the Attorney General, and A.R.S. § 41–193 describes the powers and duties of the department of law he runs. Under § 41–192(A)(1), the Attorney General is to render such legal services as the departments require. His department of law is one of the departments that may require legal services. Under § 41–193(A)(1), the legal department shall prosecute in the supreme court all proceedings in which a state officer is a party in his official capacity. This action is essentially one by the Attorney General, not by the State of Arizona, to vindicate the interests of

the Attorney General *qua* Attorney General. In short, the Attorney General is the client. He has standing to assert what he believes to be the proper contours of his office. This is entirely compatible with the proposition that the Attorney General has no standing generally to assert claims under the constitution. Here the claim is a specific one related solely to his office.

The purpose of the standing requirement is to ensure that there is a true controversy between the parties and potential harm-in-fact. Where, as here, the Attorney General brings an action involving the scope of his office *qua* office, and where, as here, a separation of powers claim is accompanied by a claim under article V, § 9 of the constitution, standing exists. This is true even though we do not reach the merits of the article V argument. Its good faith assertion ensures standing. Nor would my view give the Attorney General carte blanche to bring actions on behalf of the state without a true client. He would be limited to those instances in which his office is the true client and where he is attempting to vindicate the interests of his own office, not those of the public.

In all other respects, I concur in the opinion and the judgment of the court.