32 P.3d 19

Sam STEIGER, an individual,
Plaintiff–Appellee,

v.

J. Grant WOODS and Marlene G. Woods,
husband and wife; Robert B. Carey,
Defendants–Appellants.

Nos. 1 CA–CV 00–0081, 1 CA–CV 00–0084.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 18, 2001.

John E. Karow, Scottsdale, Attorney for Appellee.

Gallagher & Kennedy, P.A., by Kevin E. O'Malley and Don D. Skypeck, Phoenix, Attorneys for Appellants Woodses.

Burch & Cracchiolo, P.A., by Brian Kaven and Daryl D. Manhart, Phoenix, Attorneys for Appellant Carey.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Appellee challenged the state's provision of private attorneys to represent state officials in a criminal investigation. The trial court entered judgment in favor of appellee and ordered appellants to repay to the state the full amount of the funds paid to their attorneys. As discussed below, we hold that Arizona Revised Statutes Annotated (A.R.S.) § 41–193(A)(2) (1999) authorized the Arizona Attorney General to provide legal representation to protect the official interests of the Office of the Attorney General in the situation presented here, but did not allow the retention of counsel to defend an Assistant Attorney General who was under criminal investigation by a grand jury. We therefore reverse the judgment as to appellants J. Grant Woods and Marlene G. Woods, affirm the judgment as to appellant Robert B. Carey, and remand for entry of appropriate judgments.

## BACKGROUND

¶ 2 The investigation relevant to this appeal began when a former secretary to appellant Robert B. Carey, who was then First Assistant Attorney General, accused him of using funds he had raised for support of programs of the Arizona Attorney General's Office for activities other than those for which the funds had been solicited. She alleged in part that Carey used money collected for a luncheon honoring Dr. Martin Luther King, Jr. to instead fund retreats for attorneys employed by the Attorney General, and that he did not comply with state government procurement rules and regulations in handling the monies. The former employee took her allegations to Maricopa County

Attorney Richard Romley. Romley initiated a grand jury investigation.

¶ 3 Appellant J. Grant Woods was the Attorney General when the allegations against Carey were made. He had no personal involvement in the management of the funds.

¶ 4 The Attorney General's Office, by the Chief Counsel of the Civil Division, contracted with one law firm, Brown & Bain, to provide legal services to assist the Attorney General's Office and Carey, "in his official capacity" as the First Assistant Attorney General, regarding the investigation by the Maricopa County Attorney's Office. Attorney Paul Eckstein provided the bulk of these services for Carey. Another law firm, Wilenchik & Bartness, which had a contract to represent the state, provided representation to Woods and the law department. Funds from accounts of the Office of the Attorney General were used to pay the two law firms.

¶ 5 The grand jury proceeding did not result in any criminal indictments and instead the matter was resolved by an agreement. Under the agreement, Woods and Carey acknowledged that some monies collected to finance activities that were beneficial to the Attorney General's Office and the community were expended for purposes other than the purpose for which they were solicited or collected. The amount of $29,321.49, which included a twenty percent penalty, was returned to the injured parties. The Attorney General's Office paid $4,000.00 to the Maricopa County Attorney's Office as reimbursement for costs of the investigation. Carey resigned from his position as First Assistant Attorney General. Woods agreed to "work with the State Treasurer to see that any future funds are handled in strict accordance with appropriate procedures."

¶ 6 Appellee Sam Steiger demanded that Woods bring an action under A.R.S. § 35–212 in the name of the state to recover monies paid by the state for the representation of Woods and Carey in the investigation. After Steiger's request was declined, he filed this action against Carey, Woods, and Woods's wife seeking a judgment ordering them to repay the state the funds paid to the

private attorneys plus a twenty percent penalty.

¶ 7 Carey and the Woodses filed motions to dismiss the complaint for failure to state a claim. They argued that A.R.S. §§ 41–192(A)(1) and 41–192.02(A) authorize the Attorney General to provide legal services, including the hiring of outside counsel, for a matter such as that for which Woods and Carey had been provided representation. They also asserted that the conflict of interest statutes, A.R.S. §§ 38–502, –503 and 505, had not been violated because they had no interest in the law firms that were retained nor did either Woods or Carey receive any compensation for work done in the matter. Finally, they argued that they had not violated A.R.S. § 38–601, which prohibits state officers from receiving any salary or emolument in excess of salary, because they did not receive any pecuniary profit from the payments made to private counsel.

¶ 8 The trial court granted the motions to dismiss on the grounds that the conflict of interest allegations failed to state claims under the cited statutes and that because the defendants did not receive any money in excess of their salaries, Steiger had failed to state a claim under A.R.S. § 38–601. The court denied Steiger's motion for reconsideration but allowed him to amend his complaint.

¶ 9 Carey and the Woodses filed a motion to dismiss the amended complaint for failure to state a claim, arguing that the revised complaint merely alleged claims that had already been dismissed. The new judge assigned to the case found that Steiger had failed to allege facts that would permit the court to reconsider the previous decisions and entered an order dismissing the complaint.

¶ 10 Steiger appealed to this court. In a memorandum decision, *Steiger v. Woods,* 1 CA–CV 97–0595 (App. Sept. 15, 1998), we reversed the trial court, reasoning in part that A.R.S. § 41–192.02(A) gives the Attorney General the authority to defend employees against civil actions only, and the complaint alleged that the Maricopa County Attorney conducted a criminal investigation. This court also determined that the facts

set forth in the amended complaint adequately alleged a violation of A.R.S. § 38–503 and that the trial court erred in ruling that *State v. Boykin,* 112 Ariz. 109, 538 P.2d 383 (1975), precluded the application of A.R.S. § 38–601 to payment of legal bills.

¶ 11 Upon remand, Steiger moved for summary judgment, arguing that A.R.S. § 41–192.02 does not allow state-paid legal representation for an officer or employee who is involved in a criminal proceeding. He further asserted that, as a matter of law, defendants' actions violated the conflict of interest statutes and that they received emoluments in violation of A.R.S. § 38–601. The Woodses and Carey filed cross motions for summary judgment in which they argued that A.R.S. § 41–193(A)(2) authorized the Attorney General to provide them with counsel for the investigation, even if it was a criminal proceeding. They further maintained that because the legal representation was authorized by statute, it could not constitute an illegal emolument or conflict of interest.

¶ 12 The trial court granted Steiger's motion and denied the defendants' cross motions. The court entered judgment ordering the Woodses to repay $37,368.47 plus twenty percent of that amount to the state and ordering Carey to repay $80,878.75 plus twenty percent to the state. The Woodses and Carey timely appealed from the judgment.

## ANALYSIS

¶ 13 This appeal involves the interpretation of statutes, which presents questions of law. *See Barry v. Alberty,* 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992) (citation omitted). When reviewing questions of law, we are not bound by the trial court's determination. *Id.* (citations omitted).

¶ 14 The primary issue on appeal is whether Woods, as the Attorney General, had statutory authority to provide legal representation at state expense for himself and Carey in a criminal investigation. Woods argues that he was not personally under criminal investigation and that the attorney hired to represent him actually represented the law department and the official interest Woods

had in the investigation as head of the law department.  We agree with Woods.

■ ¶ 15 The Arizona Attorney General has no common law powers;  the powers of the office are those set forth in the Arizona Constitution and statutes.  *Fund Manager, Pub. Safety Pers. Ret. Sys. v. Corbin,* 161 Ariz. 348, 354, 778 P.2d 1244, 1250 (App. 1988), *approved in part,* 161 Ariz. 364, 778 P.2d 1260 (1989).  Two Arizona statutes bear on the issue of the authority of the Attorney General to provide legal representation.  One is A.R.S. § 41–192.02(A) (1999), which states:

> The attorney general in his discretion is authorized to represent an officer or employee of this state against whom a civil action is brought in his individual capacity until such time as it is established as a matter of law that the alleged activity or events which form the basis of the complaint were not performed, or not directed to be performed, within the scope or course of the officer's or employee's duty or employment.

Clearly, this statute does not authorize the attorney general to represent an officer or employee of the state in a criminal action, even if the matter is related to the scope or course of the person's employment.  We formerly reached this conclusion in our decision in 1 CA–CV 97–0595, in which we stated that "[t]he statute does not apply to criminal investigations."

¶ 16 The second statute at issue is A.R.S. § 41–193(A)(2) (1999), which provides:

> A.  The department of law shall be composed of the attorney general and the subdivisions of the department created as provided in this article.  Unless otherwise provided by law the department shall:

> * * *

> 2.  At the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest.

The Woodses and Carey argue that this statute authorized the Attorney General to provide legal representation for the state offi-

cials involved in the criminal investigation of use of funds collected by the law department.  Steiger disagrees, arguing that because both A.R.S. §§ 41–192.02(A) and 41–193(A)(2) deal with the authority of the Attorney General to pay for legal representation for state employees but neither mentions criminal matters, the legislative intent is that state-paid legal representation is authorized only for civil matters.  He further asserts that the provisions of the more specific statute, A.R.S. § 41–192.02(A), which limits the authority to pay for legal representation to civil actions, cannot be expanded by A.R.S. § 41–193(A)(2).

■ ¶ 17 Whenever possible, similar statutes should be construed so that they are consistent.  *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 530, 869 P.2d 500, 504 (1994).  Courts should "read statutes in harmony to avoid leaving any part of them 'superfluous, void, contradictory or insignificant.' " *Matter of Estate of Ryan,* 187 Ariz. 311, 314, 928 P.2d 735, 738 (App.1996) (citations omitted).

■ ¶ 18 When two statutes, like the ones here, "relate to the same subject or have the same general purpose—that is, statutes which are in pari materia—they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law." *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970).  The legislative intent must be determined not only from the literal meaning of the words but also from viewing the whole system of related statutes.  *Id.* This rule of construction applies even if the statutes were enacted at different times and contain no reference to each other.  *Id.*

¶ 19 Section 41–193(A)(2) is the older of the two statutes.  It was adopted in 1953 as part of a statute setting forth the powers and duties of the department of law.  *See* 1953 Ariz. Sess. Laws, ch. 16, § 1. The question whether this statute allows the Attorney General to provide legal representation in a criminal matter has not been decided in Arizona.

■ ¶ 20 Steiger argues that A.R.S. § 41–193(A)(2) cannot be read to expand the

coverage of A.R.S. § 41–192.02(A). Section 41–193(A)(2), however, was enacted years before A.R.S. § 41–192.02(A). Therefore, the earlier statute could not logically expand the coverage of the newer statute. Rather, "[w]hen statutes relate to the same subject matter, the later enactment, in the absence of any express repeal or amendment therein, is held to have been enacted in accord with the legislative policy embodied in the earlier statute." *Larson,* 106 Ariz. at 122, 471 P.2d at 734 (quoting *Desert Waters, Inc. v. Superior Court,* 91 Ariz. 163, 370 P.2d 652 (1962)).

¶ 21 If, as appellants argue, A.R.S. § 41–193(A)(2) allows the Attorney General to engage representation for officers of the state involved in either civil or criminal proceedings, why did the legislature later adopt § 41–192.02(A), which deals only with civil actions? Was it, as Steiger argues, because the legislature intended to indicate that state-paid legal representation was authorized only for civil matters?

¶ 22 We do not believe so. The legislative history of A.R.S. § 41–192.02(A), which was presented as Senate Bill 278 in 1971, is sparse at best. The available history shows that SB 278, which was described as "relating to attorney general's defending of state officers and employees in civil actions" was sent out of two Senate committees and one committee of the House of Representatives with "do pass" recommendations. Minutes of Ariz. Senate State, County and Municipal Affairs Comm. (Mar. 19, 1971); Minutes of Ariz. Senate Judiciary Comm. (Mar. 31, 1971); Minutes of Ariz. House of Rep. Governmental Relations Comm. (Apr. 12, 1971). At the March 19, 1971 meeting of the Senate State, County and Municipal Affairs Committee, legal counsel for the State Highway Department appeared in support of the bill, although any comments he may have made were not recorded.

¶ 23 Appellants suggest that A.R.S. § 41–192.02(A) was adopted in response to *Stone v. Ariz. Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107 (1963), which abolished the doctrine of governmental immunity from tort liability and thus left the state and its employees subject to liability for tortious acts done by state employees in the course and scope of their employment. Appellants' suggestion makes sense in light of the need for representation for the state and its employees in civil actions once governmental immunity was abolished.

¶ 24 The questions remain, however, as to why A.R.S. § 41–192.02(A) was necessary and how it differs from A.R.S. § 41–193(A)(2). Absent any explanation from the legislature, we can conceive of several answers to these questions. First, A.R.S. § 41–192.02(A) authorizes legal representation of state employees; A.R.S. § 41–193(A)(2) covers only officers of the state. Thus, for civil matters, the newer statute broadens the class of persons for which the state may provide legal representation.

¶ 25 Second, A.R.S. § 41–192.02(A) establishes that a state employee may be represented by the Attorney General even if the employee is sued in his or her individual capacity rather than as a state employee, as long as the activity or event forming the basis of the complaint was performed within the scope or course of the employee's employment. Although A.R.S. § 41–193(A)(2) does not indicate that the officer must be involved in the proceeding in his or her official capacity, subparagraph 1 of A.R.S. § 41–193(A) states that the law department shall "[p]rosecute and defend in the supreme court all proceedings in which the state or an officer thereof in his official capacity is a party." Therefore, it might be presumed that subparagraph 2 of A.R.S. § 41–193(A) also contemplates only actions involving officers serving in their official capacities. Section 41–192.02(A) clearly provides that officers and employees may be represented even if sued in their individual, rather than official, capacities. In addition, A.R.S. § 41–192.02(A) does not address proceedings in which an officer is not sued but instead merely "has an interest"; A.R.S. § 41–193(A)(2), on the other hand, does cover an officer with just "an interest" in any proceeding.

¶ 26 It is true, as Steiger argues, that "a statute's expression of one or more items of a class indicates legislative intent to exclude unexpressed items of the same class." *Estate of Hernandez v. Ariz. Bd. of Regents,* 177 Ariz. 244, 249, 866 P.2d 1330,

1335 (1994). Clearly, A.R.S. § 41–192.02(A) applies only to civil lawsuits and therefore cannot be used as a basis for allowing state financed representation in criminal matters; by mentioning civil actions without mentioning criminal actions, it excludes representation for criminal actions. However, the fact that one statute precludes an unexpressed item of a class does not mean that no other statute can deal with the unexpressed item. As long as the statutes on a similar subject are consistent and can be harmoniously applied, one statute may express a rule for an item or circumstance that is left unexpressed in a similar statute. *Cf. Larson,* 106 Ariz. at 122, 471 P.2d at 734 (statute should be explained in conjunction with other statutes so that they are harmonious and consistent).

¶ 27 This is the situation present in the two statutes at issue here. Section 41–192.02(A) does not say that under no circumstances may the Attorney General provide representation for a state officer involved in a criminal matter. It simply does not deal with criminal matters at all. Therefore, if in fact A.R.S. § 41–193(A)(2) authorizes state-provided legal representation for state officers in both civil and criminal proceedings, nothing in A.R.S. § 41–192.02(A) is inconsistent with such representation.

¶ 28 We now turn to interpreting A.R.S. § 41–193(A)(2). As applicable to the facts before us, this statute provides that when deemed necessary by the Attorney General, the law department shall prosecute and defend any proceeding in a state court in which the state or a state officer is a party or has an interest. Thus, the statute gives the Attorney General the discretion to determine when the law department shall prosecute or defend a state court proceeding.

¶ 29 Steiger has not argued that the grand jury investigation involving the use of law department funds was not a "proceeding." Under Arizona case law, "[t]he term 'proceeding' is a very comprehensive one that means a prescribed course of action for enforcing legal rights. The term may refer to a mere procedural step as well as to a complete remedy." *Oliver v. Ariz. Dep't of Racing,* 147 Ariz. 83, 86, 708 P.2d 764, 767 (App. 1985) (citations omitted), *disapproved on oth-*

*er grounds, Southwestern Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality,* 194 Ariz. 22, 24, 976 P.2d 872, 874 (1999). In *People ex rel. Babbitt v. Herndon,* 119 Ariz. 454, 457, 581 P.2d 688, 691 (1978), the court noted that a subpoena enforcement hearing, which occurred at the investigatory stage prior to the filing of a complaint, "must be regarded as a judicial proceeding" even though "it cannot be characterized as a 'case' or 'suit.'"

¶ 30 Romley testified at his deposition that a grand jury was convened for the investigation of the use of the funds. He also acknowledged that a grand jury is a state court proceeding. A prosecutor's investigatory powers are derived from the grand jury; in our system, the grand jury directs inquiries into public crimes. *Gershon v. Broomfield,* 131 Ariz. 507, 509–10, 642 P.2d 852, 854–55 (1982). Therefore, we conclude that the investigation at issue here was a state court proceeding for purposes of A.R.S. § 41–193(A)(2).

¶ 31 The terms "prosecute and defend" used in the statute have both civil and criminal connotations. "Prosecute" means "to carry on an action or other judicial proceeding; to proceed against a person criminally." Black's Law Dictionary 1221 (6th ed.1990). "Defend" is defined in part as "[t]o represent defendant in administrative, civil or criminal proceeding." *Id.* at 419. Thus, the statutory authority to "prosecute and defend" by definition includes legal representation in both civil and criminal proceedings.

¶ 32 Both Woods and Carey fell within the Arizona statutory definition of "officer," which is "the incumbent of any office ... or his deputy or assistant exercising the powers and duties of the officer." A.R.S. § 38–101(3) (1996). Romley testified that Carey was the subject of the investigation; therefore, Carey was a "party" in the "proceeding." Woods and his office had an interest in the grand jury's proceedings because the findings and results of the investigation would affect the manner in which he was required to handle funds in the department. Therefore, Woods clearly had a legitimate interest in the criminal proceedings in which a state officer, his assistant, was a party.

¶ 33 The Attorney General is statutorily authorized to protect an interest of the Attorney General's Office. *State ex rel. Woods v. Block*, 189 Ariz. 269, 272, 942 P.2d 428, 431 (1997). In concurring in the *Block* court's holding concerning standing, Justice Martone explained the Attorney General's authority to represent his or her own department and official interests:

> A.R.S. § 41–192 describes the powers and duties of the Attorney General, and A.R.S. § 41–193 describes the powers and duties of the department of law he runs. Under § 41–192(A)(1), the Attorney General is to render such legal services as the departments require. His department of law is one of the departments that may require legal services. Under § 41–193(A)(1), the legal department shall prosecute in the supreme court all proceedings in which a state officer is a party in his official capacity. This action is essentially one by the Attorney General, not by the State of Arizona, to vindicate the interests of the Attorney General *qua* Attorney General. In short, the Attorney General is the client.

*Id.* at 279–80, 942 P.2d at 438–39 (Martone, J., concurring and dissenting in part). Thus, the Attorney General may be the client under A.R.S. § 41–193(A)(2) for purposes of prosecuting or defending a proceeding in state court. In such a situation, the Attorney General need not use in-house attorneys. Under A.R.S. § 41–191(C) (1999), the Attorney General may employ attorneys for particular cases on a fixed fee basis. *See State Dep't of Corrections v. Fenton*, 163 Ariz. 174, 176, 786 P.2d 1025, 1027 (App.1989) (A.R.S. § 41–191(C) provides that the Attorney General can employ attorneys for particular cases).

¶ 34 The trial court apparently believed that A.R.S. § 41–193 was inadequate to authorize state-paid legal representation in a criminal matter, stating: "It is noted by the Arizona Supreme Court there are occasions in which the Attorney General may appear in opposition to particular state agency, such as a county grand jury investigating misconduct on behalf of the State of Arizona in a criminal matter, but these instances were dependent upon specific statutory grants of power."

The court cited *Arizona State Land Department v. McFate*, 87 Ariz. 139, 348 P.2d 912 (1960).

¶ 35 In *McFate*, the issue was whether the Attorney General had the legal authority to petition the superior court to enjoin the state land department from selling certain parcels of state land. *Id.* at 141, 348 P.2d at 913. The court held that the Attorney General was not authorized to assert in a judicial proceeding a position that was in conflict with a state department; to do so, said the court, was inconsistent with the Attorney General's duty as legal advisor to state departments. *Id.* at 144, 148, 348 P.2d at 915, 918. The *McFate* court noted that the instances in which the Attorney General may initiate proceedings on behalf of the state or appear in opposition to a state agency are dependent upon statutory grants of power. *Id.* at 144, 348 P.2d at 915.

¶ 36 We see nothing in *McFate* that conflicts with our interpretation of A.R.S. § 41–193(A)(2). The *McFate* court mentioned A.R.S. § 41–193(A)(2), stating that the section "presupposes a properly instituted proceeding in which the State or an officer thereof 'is a party or has an interest' and does not permit the Attorney General, in the absence of specific statutory power, to initiate an original proceeding." *Id.* at 145, 348 P.2d at 916. Thus, while the court reasoned that the statute did not provide authority for the Attorney General to initiate a proceeding, *McFate* is not dispositive as to other types of proceedings for which the Attorney General may provide representation.

¶ 37 The trial court apparently believed that, under *McFate*, the Attorney General could not appear in opposition to a grand jury investigation because no statute specifically grants him that power. However, nothing in the record supports a conclusion that Woods hired attorney Wilenchik to protect the interests of his office by *opposing* the grand jury. He became involved because the investigation concerned an officer of the law department and the use of funds collected by the department. Section 41–193(A)(2) granted Woods the power to intervene through counsel in a proceeding under such circumstances.

¶38 Woods was neither accused of nor investigated for any criminal activity by the grand jury. This record is replete with statements from the county attorney's office supporting Woods's assertion that he was innocent of criminal misconduct and was not investigated for any such misconduct. There were legitimate reasons for Woods to retain counsel on behalf of the office of the Attorney General in connection with the grand jury investigation, as H. Leslie Hall, Chief Counsel of the Attorney General's Civil Division explained in a letter to Steiger when the retention of counsel was challenged:

Lawyers were hired to represent the Office of the Attorney General to respond to the many and voluminous requests for documents and information from the Auditor General and the County Attorney and to ensure that the position the Office had taken with regard to the issue of private versus public monies was explained. One of these lawyers also advised and represented the Attorney General, in his official capacity, so that he would be kept abreast of the matter and so he could, if needed, have independent advice. Although Mr. Woods had the utmost confidence in his First Assistant, Robert B. Carey, *who was under investigation, he deemed it prudent to secure counsel who owed him allegiance.* He felt it necessary, as the elected State officer, that he ensure that his Office had conducted itself appropriately.

(Emphasis added.)

¶39 These same considerations, however, highlight the very different issues that the investigation of Carey's conduct presented. While Woods hired Wilenchik for the reasons stated in Hall's letter, counsel hired for Carey was clearly obliged to focus on Carey's interest as the subject of a criminal investigation, a person whom the county attorney was "seriously considering prosecuting." Indeed, as Hall's letter makes clear, the need to hire Wilenchik for Woods and his office arose because lawyers hired for Carey would owe allegiance to Carey, not to the Attorney General or to the public interest in any real respect. While the Brown & Bain contract purported to retain the firm "to assist ... Robert B. Carey, in his official capacity as the First Assistant Attorney General, regarding the investigation by the Maricopa County Attorney's Office," we must recognize that it was Carey, the person, that County Attorney Romley was "seriously considering prosecuting" and who would have to answer personally for any charges brought by the grand jury. We must view the situation as it really was: Wilenchik was hired to represent Woods, who was not under investigation, and his office; Eckstein was hired to represent Carey, who was under investigation and subject to possible indictment. Indeed, Deputy County Attorney James H. Keppel wrote a letter to Eckstein detailing "the areas of potential criminal liability which exist for Mr. Carey in light of the evidence disclosed to date." This letter included allegations, and supporting evidence, regarding charges of theft, tampering with a public record, fraudulent schemes, conflicts of interest, misuse of public monies, depositing public money in a bank without authority of law, and violation of the procurement code.

¶40 In short, the retention of Brown & Bain to represent Carey cannot be justified on the grounds that support Woods's retention of Wilenchik. We must therefore address Carey's contention that A.R.S. § 41-193(A)(2) authorizes the Attorney General to provide a criminal defense at public expense to a person under investigation by a county grand jury for numerous felony offenses. We reject this contention.

¶41 We note that the job for which attorney Eckstein was hired by the Attorney General indeed brings the *McFate* decision into play. For clearly, Eckstein's role in defending Carey would bring him, and looking back to the purported authority for Eckstein's retention, the Attorney General, into opposition with a grand jury and a county attorney that was trying to decide whether to bring criminal charges against Carey. Pursuant to *McFate*, we would have to find specific statutory authority for the Attorney General to provide such a criminal defense or retain others to do so on his authority. As the supreme court stated, "there are occasions on which the Attorney General may initiate proceedings on behalf of the State, and may even appear in opposition to a particular

state agency, but these instances are dependent upon specific statutory grants of power." 87 Ariz. at 144, 348 P.2d at 915. The court gave examples of such specific grants of power, which include the power, invoked by Steiger in this case, that "the Attorney General 'shall bring an action in the name of the state to enjoin the illegal payment of state money.' " *Id.* The general grant of power contained in A.R.S. § 41–193(A)(2) certainly does not *specifically* provide authority to the Attorney General or his designee to defend a public official accused of criminal violations of the state penal code. We conclude, in fact, that it can provide no such authority at all, neither specific and express, nor by reasonable inference.

¶ 42 Section 41–193 is a general statute broadly defining the Office of Attorney General. It generally identifies the office as empowered to undertake legal duties to the state, in state courts; to "prosecute and defend any proceeding . . . in which the state or an officer thereof is a party or has an interest." However, an overview of the Attorney General's authority negates any implication that he or she may defend, or hire other lawyers to defend, public officials under investigation for potential criminal liability.

¶ 43 The Attorney General is the "chief legal officer of the state" and is to provide legal advice and services to state departments. A.R.S. § 41–192(A)(1) (1999 & Supp. 2000). The Attorney General also "[e]xercise[s] supervisory powers over county attorneys" and assists county attorneys in the discharge of their duties "when deemed necessary." A.R.S. § 41–193(A)(4), (5). Among the county attorneys' duties which are subject to the Attorney General's supervisory powers is that of assisting in grand jury investigations. A.R.S. § 11–532(A)(3) (1990 & Supp.2000). Woods, noting that criminal prosecutions are brought by "the State of Arizona," recognizes that he could not himself act as a criminal defense lawyer because of the conflict that would pose with the Attorney General's role as chief legal officer for the state. It is asserted, however, that this conflict was avoided by the retention of outside counsel. Carey does not explain how Woods could hire outside criminal defense

lawyers, on the presumed authority of A.R.S. § 41–193, to act in areas in which Woods himself could not act because the Attorney General is Arizona's chief prosecutor.

¶ 44 We have characterized the Brown & Bain contract as essentially providing for Carey's personal criminal defense. Carey argues that the contract should be interpreted literally, pursuant to which interpretation Brown & Bain was hired to represent the Attorney General's Office and Carey in an official capacity only. His argument then posits that if a contrary understanding of the contract is proposed, summary judgment is obviated and a jury trial is required to resolve the supposed factual dispute. However, summary judgment is called for if "reasonable people could not agree with" Carey's assertion that Brown & Bain was really acting in the interests of the Attorney General's Office and its First Assistant as a state official. *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Carey's interpretation of the Brown & Bain contract is not reasonable. Eckstein could not represent Carey in a criminal matter in Carey's "official capacity" only. It was Carey, not the Office of the Attorney General, against whom Romley's prosecution would have been brought. Carey could not be prosecuted for the conduct of his office unless he were personally complicit in illegality. *See* A.R.S. § 13–306 (person is liable for acts of an enterprise only if he caused such acts and his own conduct satisfies requirements for personal criminal liability). Indeed, given the undisputed evidence regarding Wilenchik's assigned role in serving the Attorney General's legitimate interests, consistent with the public's own interest in sound administration, it is not possible to accept the assertion that Brown & Bain spent over $80,000 worth of attorney time essentially duplicating Wilenchik's function. Carey offers no explanation to rebut the inescapable conclusion that, while Wilenchik was hired to serve the legitimate interests of an elected public official and the office he held, Brown & Bain was hired to protect Carey from the risk of indictment. Section 41–193(A)(2) cannot reasonably be read to allow public funding of Carey's personal defense.

¶ 45 We are aware of three states that allow their attorney generals to provide for the criminal defense of public officials. The statutory authority in each case is express and specific. In New Jersey, "the Attorney General may provide for the defense of a State employee or former State employee, if he concludes that such representation is in the best interest of the State"; the actions in which such provision may be made expressly include "criminal proceedings." N.J. Stat. Ann. § 59:10A–3 (1992). In North Carolina, "upon request of an employee or former employee, the State may provide for the defense of any civil or criminal action or proceeding brought against him in his official or individual capacity, or both, on account of an act done or omission made in the scope and course of his employment as a State employee." N.C. Gen.Stat. § 143–300.3 (1999). And a South Carolina statute provides:

> In the event that any officer or employee of the State, or of any political subdivision thereof, be prosecuted in any action, civil or criminal, or special proceeding in the courts of this State, or of the United States, by reason of any act done or omitted in good faith in the course of his employment, it is made the duty of the Attorney General, when requested in writing by any such officer or employee, to appear and defend the action or proceeding in his behalf. Such appearance may be by any member of his staff or by any solicitor or assistant solicitor when directed to do so by the Attorney General.

S.C.Code Ann. § 1–7–50 (1986). By contrast, Carey relies on the same general grant of powers that make the Arizona Attorney General the state's chief prosecutor to also, contradictorily, make the Attorney General a roving criminal defense lawyer for state officers, authorized to confront and oppose other agents of the state who seek to prosecute wayward public officials for suspected criminal activity. We conclude that the retention of counsel for Carey was unauthorized.

¶ 46 Steiger argues that appellants' actions violated A.R.S. §§ 38–503 (1996) and 38–505 (1996), which are statutes prohibiting conflicts of interest. He maintains that by receiving the benefit of legal representation paid for by state funds, appellants were required to comply with the requirements of A.R.S. §§ 38–503 and 38–505.

¶ 47 Section 38–503 provides in relevant part:

> **A.** Any public officer or employee of a public agency who has, or whose relative has, a substantial interest in any contract, sale, purchase or service to such public agency shall make known that interest in the official records of such public agency and shall refrain from voting upon or otherwise participating in any manner as an officer or employee in such contract, sale or purchase.
>
> **B.** Any public officer or employee who has, or whose relative has, a substantial interest in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer or employee in such decision.

We conclude that this statute does not apply when, as with Woods, the retention of legal counsel is authorized by statute. It appears that A.R.S. § 38–503(A) is written to prevent involvement by a state officer in a decision to procure goods or services when the officer or a relative of the officer has a substantial interest in an entity that seeks to provide the goods or services. There was no evidence that either Woods or Carey had any substantial interest in the law firms that were hired to represent them. Further, the evidence indicates that Leslie Hall, not Woods or Carey, authorized the retention of counsel and the evidence does not support a claim that either of these subsections was violated.

¶ 48 Section 38–505(A) provides:

> No public officer or employee may receive or agree to receive directly or indirectly compensation other than as provided by law for any service rendered or to be rendered by him personally in any case, proceeding, application, or other matter which is pending before the public agency of which he is a public officer or employee.

This statute does not apply here. There was no allegation that Woods or Carey provided any service in a matter pending before the law department for which they received com-

**106**

pensation not provided by law. Even if the provision of legal representation could be considered as either direct or indirect compensation, it was not received for any service rendered in a matter pending before the law department. In addition, as to Woods, the provision of legal representation in this instance was "provided [for] by law"; thus, even if deemed to be direct or indirect compensation, the legal representation provided by the state was not contrary to law. As a matter of law, appellants did not violate A.R.S. § 38–505.

¶ 49 Steiger also argues that appellants received a salary or emolument in violation of A.R.S. § 38–601 (1996). This statute provides that "[s]tate or county officers ... shall receive the salary provided by law, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided." Steiger asserts that appellants received monies in the form of legal fees paid to their personal attorneys, which, he argues, constitute illegal salaries or emoluments.

¶ 50 In the decision in 1 CA–CV 97–0595, this court noted that A.R.S. § 38–601 applies only to unauthorized benefits, not to benefits the legislature has authorized. Thus, because we have determined that A.R.S. § 41–193(A)(2) authorizes the legal representation provided for Woods, the legal fees paid to the Wilenchik firm did not violate A.R.S. § 38–601. As we have determined that the legal representation provided for Carey was unauthorized, the legal fees paid to Brown & Bain did violate A.R.S. § 38–601.

## CONCLUSION

¶ 51 In summary, we hold that A.R.S. § 41–193(A)(2) authorized the Attorney General to retain the Wilenchik firm in the circumstances present in this case. Retention of Brown & Bain on behalf of Carey was unauthorized by law. We further hold that, as a matter of law, Woods did not violate A.R.S. §§ 38–503, 38–505 or 38–601. Carey received a salary or emolument in excess of his lawful salary. Accordingly, we reverse the judgment entered against J. Grant Woods and Marlene G. Woods and remand for entry of judgment in their favor. We affirm the judgment entered against Robert B. Carey.

CONCURRING: SHELDON H. WEISBERG, Judge, and E.G. NOYES, JR., Judge.